BRISCO et al. v. MINAH CONSOL. MIN. CO., Limited, et al.

(Circuit Court, D. Montana. May 17, 1897.)

No. 235.

1. VENDOR AND PURCHASER—VENDOR'S LIEN—LANDS HELD IN SEVERALTY SOLD IN SOLIDO.
   Where the several owners of different mining claims join in a contract for the sale of all the claims for a sum in solido, payable to them jointly, and the several deeds are executed, and possession taken thereunder, in pursuance of the contract, they jointly have a vendors' lien on all the property conveyed, for the unpaid purchase money.

2. SAME—NOTICE OF LIEN—INNOCENT PURCHASER.
   A grantee or mortgagee, who knew at the time his grantor purchased the real estate that he did not pay all the purchase money, will be charged with notice if it still remains unpaid at the time of the conveyance to him, and he will take title subject to the lien therefor.

3. SAME—WAIVER OF LIEN.
   An agreement by the vendors of mining claims to accept payment therefor out of the proceeds of the mines, is not a waiver of the vendor's lien for the unpaid purchase money.

4. SAME—DEFECT IN TITLE—DEFENSE TO ACTION FOR PURCHASE MONEY.

It is no defense to an action for purchase money that the grantor had only a possessory title to a portion of the land conveyed, the contract having been for the delivery of deeds and abstracts showing full and complete title, where abstracts were delivered which correctly showed the title, and the deeds were accepted, possession taken thereunder, and the grantor has not been ousted.

5. SAME—SET-OFF AGAINST PURCHASE MONEY—PLEADING.

A claim for damages constituting a proper set-off against purchase money will not be considered if not set forth by cross bill.

6. PROCESS AGAINST FOREIGN CORPORATION—MONTANA STATUTE—GARNISHMENT.

Comp. St. Mont. div. 5, § 442, requiring foreign corporations to file with the secretary of state the designation of an agent within the state upon whom process against the corporation may be served, and the consent of the corporation to accept such service, does not authorize the service on such agent of a notice to such corporation to answer as garnishee.

7. VENDOR AND PURCHASER—ACTION TO FORECLOSE LIEN—LESSEES AS PARTIES.

Lessees of real estate are not necessary parties to a suit for purchase money and foreclosure of vendor's lien, unless a decree is sought affecting their rights.

Walsh & Newman, Sanders & Sanders, and A. J. Craven, for complainants.

George F. Shelton and Cullen, Day & Cullen, for defendants.

KNOWLES, J. The first point presented for consideration in this case is the right to a vendor's lien. Plaintiffs contracted to sell and convey to defendants certain quartz lode mining claims named and described as the "Minah Lot 41, East End," "Minah Lot 49, West End," "Homestake," "The Annie B," "The Hillsdale," "Iron Dollar," "Gold Cross," and "Iowa," situate in Colorado mining district, Jefferson county, Mont. The contract of sale recites: "Whereas, the first parties are the owners and in possession of certain mining ground consisting of quartz lode mining claims situate near Wickes, in the county of Jefferson, state of Montana." Then, after providing for the examination of the said mining claims, it is provided that the first parties, the plaintiffs above named, shall deposit in the Second National Bank of Helena, Mont., title deeds and abstracts showing full and complete title, free and clear of incumbrance, to said property, except a mortgage for $35,000, held by the Montana Smelting Company. It is provided that this mortgage shall be paid out of the first payment on said property, which was to be £20,000 sterling. The payments of stock are to be made to the parties jointly. It is also provided that the second party to this contract, which is the defendant Minah Consolidated Mining Company, Limited, shall make a contract to the effect "that the proceeds of the mine or mines sold shall be placed in the Second National Bank of Helena, Montana, in trust, and in the name of E. D. Edgerton, president, as trustee for each and both of the parties hereto, 10,000 pounds sterling, and on receipt of that sum or amount, either from the proceeds of the mine or otherwise, if deposited for that purpose, the said bank, by E. D. Edgerton, president, shall pay the same to the first parties." Of this £10,000 sterling plaintiffs admit that they have received the sum of $4,224.80, and that defendant is entitled to a credit thereon of the sum of $7,621.35. The

lien is claimed on all of the property conveyed for the balance, claimed to be $54,912. There was no price named as the value of or consideration of any one of these mining claims. They were all conveyed for so many pounds sterling and for so much stock. The facts, however, appear to be that the title to all of said mining claims was not in all of the defendants jointly. The plaintiff Annie E. Briscoe held the title to the Iron Dollar quartz lode mining claim known in the surveyor general's office as "Survey No. 2,027," and "Lot No. 94," being a portion of township 7 N., range 4 W. She also owned the Annie B. quartz lode mining claim, known in the surveyor's office as "Survey No. 2,064, Lot 96," being a portion of township 7, range 4 W. The Minah Consolidated Mining Company held the title to and conveyed to the Minah Consolidated Mining Company, Limited, the Minah Lot 44, East End, Homestake, Hillside, and Iowa lodes. Annie E. Briscoe, John O. Briscoe, and James E. Sites conveyed to said last-named company, the defendant herein, the Minah Lot 49, West End. The several deeds conveying this property are either deeds of general or special warranty, and all are, at least, deeds of grant, bargain, and sale. The defendant the Minah Consolidated Mining Company, Limited, of London, England, accepted these deeds, and went into the possession of all of said property thereunder.

I do not know that the courts of Montana have decided the question as to whether or not, in this state, a vendor's lien exists in favor of one who conveys real estate for the unpaid purchase price thereof. In Pom. Eq. Jur. § 1249, it is stated:

"It is a firmly established doctrine of the English equity that the grantor of land who has sold and conveyed and delivered possession to the grantee, as well as the vendor in a contract for the sale and purchase of land who has delivered possession to his vendee, retains an equitable lien upon the land for the unpaid purchase money, although he has taken no distinct agreement or separate security for it, and even though the deed recites that the consideration has been fully paid."

This rule is maintained, also, in Story, Eq. Jur. § 1218.

In the case of Cordova v. Hood, 17 Wall. 1, 5, the supreme court, speaking through Justice Strong, said:

"It is a general principle that a vendor of land, though he has made an absolute conveyance by deed, and though the consideration is in the instrument expressed to be paid, has an equitable lien for the unpaid purchase money, unless there has been an express or an implied waiver of it."

In the case of Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842, the supreme court again said, speaking through Justice Brewer,

"* * * Such a lien is one which appeals strongly to the favorable consideration of a court of equity."

In the case of Chilton v. Braiden's Adm'x, 2 Black, 458, the supreme court said:

"When one person has got the estate of another, he ought not, in conscience, to be allowed to keep it without paying the consideration. It is in this principle that courts of equity proceed as between vendor and vendee."

Considering these views, it ought to be held that a vendor's lien exists for the unpaid purchase money of real estate conveyed to a vendee, and of which real estate the vendee has received possession.

It is contended, however, that in this case there can be no lien because the contract of sale was for a sum in solido, and the plaintiffs owned the property conveyed in severalty; that a vendor's lien attaches only in favor of the person making the conveyance; and that the amount of the lien on the property each conveys should be specific and definite. In other words, Annie E. Briscoe cannot have a lien upon the mining claims conveyed by the Minah Consolidated Mining Company, and said company cannot have a lien upon the claims conveyed by Annie E. Briscoe. It must be confessed the point here presented is not without difficulty. It should be remembered, however, that the contract to convey the several mining claims named was a joint contract, and that the sum to be paid was a sum in solido for all the claims named. In the case of Loomis v. Railroad Co., 3 McCrary, 489, 17 Fed. 301, it was held that:

"A person who has purchased real estate, and paid for it, and has a right to a deed in his own name, and who sells the same to a purchaser, and causes conveyance to be made direct to such purchaser by the party from whom he has purchased, has a right in equity to a vendor's lien for the purchase money."

There is nothing in this case to preclude the presumption that all of these claims were held by the parties to the conveyances jointly. It should also be noticed that the quotations from Pomeroy's Equity Jurisprudence and Story's Equity Jurisprudence state that a person who contracts to sell land, and delivers the premises to his vendee, is entitled to a vendor's lien. It is recognized by the contract of sale in this case and by this action that the parties plaintiff are jointly entitled to the unpaid purchase money for the claims sold. In many of the states a claim for unpaid purchase money for land sold can be assigned, and this assignment carries the right to the vendor's lien for such purchase money. Pom. Eq. Jur. § 1252. That author says that the rule in those states where the assignment of the claim for unpaid purchase money does not carry the lien "seems to rest on no ground of principle." It is held in some states that "whenever, by an arrangement between the parties, a note for the purchase price is given by the grantee to a third person instead of to the grantor, such person is generally held entitled to enforce the lien." See Pom. Eq. Jur. § 1254, note, and authorities cited. The rules upon this matter have been formulated for the most part in accordance with the dictates of right as viewed by the chancellor. I cannot see why, in a case like the one at bar, a vendor's lien should not exist in favor of all the parties contracting to sell the mining claims named, and who were to be paid in solido therefor. The right to have the purchase money paid is a joint right, and the equity is vested in them all jointly. I therefore hold that plaintiffs have a vendor's lien for the amount of the unpaid purchase money, namely, for $54,912.

There is a claim that the defendant Mainwairing has a lien by mortgage on the said mining claim, and that the said mortgage was taken subsequent to the sale of the said mining claims to the Minah Consolidated Mining Company, Limited, and that this mortgage was taken without any notice of lien of plaintiffs. At the time of the

sale of the said mining claims to the mining company, the said Main-wairing was the chairman of the board of directors of said mining company. The allegations of said bill are:

"That the said Mainwairing is, and since the organization of said defendant company was, one of the trustees and managers and the president or chairman of the board of trustees, and could not make or enter into a contract with said company; and the said Mainwairing, at all times since the execution of the contract hereinbefore set forth, knew of the rights of these plaintiffs under said contract, and knew that they had not been fully paid for the premises hereinbefore described as provided in said contract, and that they had a right to and claimed a vendor's lien upon said premises and every part thereof."

The defendant Mainwairing, in answer to this part of the bill, says:

"It is not a fact that this defendant, at the time of the loaning of said money, and the execution and delivery of said mortgage, knew of any pretended rights claimed by the plaintiffs in this suit under said contract, or that they had not been fully paid for the premises described in said bill and in said contract, or that they had a right to a vendor's lien upon said premises or any part thereof."

The bill in this case was under oath, and the answer was also sworn to. It will be observed that this answer in this particular does not fully meet the allegations of the bill. The bill states that the defendant Mainwairing at all times since the execution of the contract hereinbefore set forth knew of the rights of these plaintiffs under said contract, and knew that they had not been fully paid. The answer simply denies that at the time the mortgage was executed to him he knew these facts. This leaves the court to draw the inference that at the time of the execution of the contract he did know this. In Wade, Notice, § 19, this rule is expressed:

"So, when the adverse claim is a vendor's lien for the unpaid purchase money, notice to the purchaser that the title passed without actual payment of the price agreed upon, although the deed contains an acknowledgment of full payment, will be sufficient to put him upon inquiry as to that fact; and, failing to exercise reasonable diligence to ascertain whether there has been a subsequent payment, he will be charged with actual notice of what remains unpaid, and will hold title subject to the prior lien."

It is believed that this is a correct rule. The defendant Mainwairing, then, by his pleading, having admitted that he knew at the time of the sale of this property that the purchase price had not been paid, cannot claim to be an innocent purchaser, and it must be held that he took his mortgage subject to the vendor's lien of plaintiffs.

It is claimed that plaintiffs waived this lien. The burden was upon the defendants Mainwairing and Scott to show this fact. Story, Eq. Jur. §§ 1224, 1225; Cordova v. Hood, 17 Wall. 1; Gold Mines v. Seymour, 153 U. S. 509, 14 Sup. Ct. 842. The fact that plaintiffs agreed that this £10,000 sterling should be paid out of the proceeds of the mine does not prove this contention. It rather sustains the position that the plaintiffs expected to look to this property conveyed for the payment of this sum. The payment from the proceeds of the mine was only a mode of payment. There is no other evidence that bears upon this point. In regard to the defendant Scott, it is certain he had actual notice that this £10,000 sterling—a part of the consideration of purchase—was not paid at the time of the purchase of said premises, for he signed the contract

of purchase as the agent of the defendant the Minah Consolidated Mining Company, Limited. In this contract it was provided for the payment of said sum, and the manner of the payment thereof. This knowledge was sufficient to put him upon inquiry as to whether it ever had been paid. When the Minah Consolidated Mining Company, Limited, put it out of its power to pay the money named in the mode provided, then the liability to pay the same became absolute. The defendant Scott cannot be said to be a purchaser in good faith for a valuable consideration. He knew, as has been stated, of this indebtedness of the company to plaintiffs, and he purchased the property, which it is not denied was valuable, for a nominal sum of five shillings. His title, then, must be considered subordinate to that of the lien of plaintiffs.

The fact that the plaintiffs had only a possessory title to two of the claims conveyed, namely, the Annie B. and Iron Dollar, while they had contracted that they would deposit in the Second National Bank of Helena, Mont., title deeds and abstracts showing full and complete title, free and clear of incumbrance, to said property, except a mortgage of $35,000, will not invalidate their lien. The Minah Consolidated Mining Company took possession of the property named in pursuance of the deeds named, and it does not appear that it, or its grantees, have ever been ousted from that possession by any superior title. This is not a good defense against a demand for the purchase money for said mining claims. The authorities upon this point are numerous and conclusive. There are strong grounds for believing that defendant the Minah Consolidated Mining Company, Limited, and defendant Scott were fully apprised of this fact as to the title to these claims before the deeds were delivered to said company. There was an abstract of the title delivered with said deed that showed this fact. The defendant Scott, after he obtained title to the same, had his name substituted for that of the plaintiff Annie E. Briscoe in the proceedings in the United States land office, and, thus availing himself of proceedings instituted by said Annie E. Briscoe, obtained a patent to said lodes. The title was thus made complete. Under these circumstances, neither the said company nor Scott could do more than ask to have the amount paid to obtain the patent credited upon the amount due for the purchase money. Bush v. Marshall, 6 How. 284; Galloway v. Finley, 12 Pet. 264.

There is also claimed as an offset against this demand for purchase money certain damages which it is claimed the said company suffered on account of the plaintiffs John O. Briscoe and Annie E. Briscoe taking possession of the mining claims above described. There was a suit instituted by the defendant the Minah Consolidated Mining Company, Limited, against the said John O. and Annie E. Briscoe to recover possession of said premises, and for damages for the unlawful taking of the same, and for rents, issues, and profits. In this action said company recovered a judgment of possession and damages for the ore taken from said claims the sum of $7,500. It is claimed in the answer that the claim for this unpaid purchase money was litigated in this said action, and that the said sum of $7,500 was the amount due said company over and above this claim. An

examination of the issues in that case shows that this could not have been the case, and it is not perceived how it could have been. The damages sought in that case were founded upon a tort. The claim in this case is founded upon contract. There is some claim made for damages arising out of a prevention of the sale of the stock of the corporation on account of the wrongful acts of John O. and Annie E. Briscoe, which were not considered in said action. But such damages, if any, were not the proximate damages arising from the alleged trespasses of said parties, but are so remote that they cannot be considered. In regard to these damages it is true, as claimed by plaintiffs, that they should have been set forth in a cross bill if a proper set-off. This was not done.

It is claimed that all interest in this claim for £10,000 sterling was garnished by the Omaha & Grant Smelting & Refining Company. It appears that this company obtained a judgment for the sum of $30,512.99, with costs, against the Minah Consolidated Mining Company of Montana and John O. Briscoe; that subsequently it caused an execution to issue on said judgment, and the sheriff to whom the same was issued did serve the same upon W. E. Cullen as the statutory agent of the Minah Consolidated Mining Company, Limited, of London, by delivering to him a certified copy of the same, together with a notice that by virtue thereof he had duly attached all stock, shares, or interest in stock or shares of the Minah Consolidated Mining Company, Limited, of London, and all moneys, goods, effects, debts due or owing, or any other personal property belonging to the defendants in said action, namely, John O. Briscoe and the Minah Consolidated Mining Company, the Montana corporation. On the 3d day of October, 1891, having advertised this contract for the payment of £10,000 sterling for sale, he sold the same to said Grant Company for $60. The question presented is as to whether or not this was a valid sale. In considering this point, the first matter for consideration is as to whether or not the said Minah Consolidated Mining Company, Limited, of London, could be garnished in Montana. Unless some statute authorized the proceeding, it could not be garnished in this state. The defendant mining company, limited, of London, filed, it appears, the proper certificate of corporation and proper statement, as required by section 442, Comp. Laws Mont., then in force, and the said company also filed the certificate under the seal of the corporation and the signature of its president, W. F. B. Massey Mainwairing, and its secretary, A. G. Wolff, in the following words:

"The Minah Consolidated Mining Company, Limited, 13 St. Helen's Place. London, E. C. May, 1890. We, the Honorable William Frederick Barton Massey Mainwairing and Adolph Grainger Wolff, respectively the president and secretary of the Minah Consolidated Mining Company, Limited, incorporated under the Joint-Stock Companies Acts 1862 to 1886, and having its registered office at No. 13 St. Helen's Place, in the city of London, and a place of business at Wickes, Jefferson county, Montana, United States of America, do hereby certify and declare that the said corporation has consented, and hereby consents, to be sued in the courts of the state of Montana, United States of America, upon all causes of action arising against it in such state, and that service of process may be made upon William E. Cullen, of Helena, Montana, United States of America, attorney at law, as agent for it, and in its behalf; and said company has also consented, and doth hereby consent,

that if and when process shall be at any time served upon the said William E. Cullen it shall be taken, deemed, and held to be valid, to all intents and purposes, as if it were served upon the company in Great Britain.

"The Minah Consolidated Mining Company, Limited.

"W. F. B. Massey Mainwairing, President.

"A. G. Wolff, Secretary."

W. E. Cullen, named in the above certificate, accepted this agency in the following words:

"State of Montana, County of Lewis and Clarke—ss. To Whom It May Concern: Know ye that I, W. E. Cullen, of the city of Helena, and state aforesaid, the person named in the foregoing appointment as the agent of the Minah Consolidated Mining Company, Limited, for the purpose of receiving service of process on it for all causes of action arising in this state, do hereby accept the said appointment. In testimony whereof I have hereunto subscribed my name at Helena, Montana, this 16th day of June, A. D. 1890. W. E. Cullen. In the presence of C. H. Cooper."

These papers were filed in the office of the secretary of state for Montana. I believe these papers comply with the provisions of section 442, Comp. Laws Mont., which were in force at the date of the above suit, and I think it is very evident from the certificate of acceptance of the agency that W. E. Cullen agreed to accept service of process only in cases against that company. He accepts the appointment for the purpose of receiving service of process on it for all causes of action arising in this state. The service of process in a garnishee proceeding is not a service for a cause of action. I do not think the statute under which these certificates were made out and filed contemplated that an agent should be appointed for service in a garnishee proceeding, an auxiliary proceeding. I know there are decisions under statutes somewhat similar to this which hold that process meant the service of garnishee notices. Taking the whole statute together, I cannot think that such was the intention of the legislation. It could not be presumed that an agent would know enough of the business of the company he represented to answer questions as to the indebtedness of the company to any individual. I have doubts also as to the right to sell such a contract as the one under consideration, not in the possession of the officer making the sale.

The defendants urge that Hersey and Bean are necessary parties to this suit. They are lessees of the mining claims above named. They do not appear to be residents or citizens of Montana, although conducting the business of mining therein. Justice Story, in his work on Pleadings, lays down the rule that a lessee is not a necessary party unless it is sought to affect or prejudice his rights. Story, Eq. Pl. § 157. It may be said that, as these parties are not citizens or inhabitants of this state, the court would have the right to proceed and determine the issues here presented. I believe, however, there should be no judgment in this case which should prejudice their rights. It is ordered that a decree be entered in accordance with these views.