Allen, J.
 

 The plaintiffs in error claim that the mill owners cannot recover in this action for the following reasons:
 

 (1) That the mill owners had no title to the lands conveyed, and hence the grant was without consideration to the plaintiffs in error.
 

 (2) That the conveyance in question gave to the traction company only an easement for the purpose of building a railroad and transmission line, and hence the traction company had the right to abandon exercise of the easement at any time, and could thereby escape the obligation of the covenants in the deed.
 

 (3) That the money was expended for maintenance of the race, and that the possession, maintenance, and control of the millrace were exercised, not by the mill owners, but by the Akron Canal & Hydraulic Company.
 

 (4) That the traction company never took pos
 
 *693
 
 session or exercised any of its rights under the grant.
 

 (5) That the contract is silent as to its term of duration, and is therefore terminable at the will of either party.
 

 The court of common pleas sustained the proposition that the plaintiffs in error could, by abandoning the rights conveyed to them in the millrace, escape their obligations under the covenants contained in the deed.
 

 The Court of Appeals reversed the judgment of the court of common pleas on the ground that the plaihtiffs in error, in accepting the conveyance, took the risk as to the title of the mill owners in the interest in real estate therein conveyed, holding that the mill owners’ title and interest, whether of a mere easement or greater, were sufficient to constitute a consideration for the plaintiffs in error’s promise to maintain the millrace.
 

 Did the mill owners have title to the property conveyed or did they have a mere easement in the millrace? We think that the mill owners had title to the mill race, and hence had an interest in the race which amounted to more than an easement.
 

 The Cascade millrace is an ancient artificial race, originally constructed as an open race or canal by Eliakim Crosby and Simon Perkins, prior to the 25th day of July, 1833, extending (upstream) from what is known as the “first perpendicular fall” in the race near the foot of Mill street, in what is now known as lot R, King’s addition to Akron, and also known as the Stone mill site, easterly in what is now known as Mill street;
 
 *694
 
 thence northerly through Main street to a point near the south line of original Federal street; thence southeasterly to the Little Cuyahoga river, intersecting that river near what is now known as Case avenue, originally in the village of Middle-bury. This race was constructed by Crosby and Perkins for the purpose of flowing through it the waters of the little Cuyahoga river to their milling sites at the first perpendicular fall, and below, for hydraulic and power purposes. The race extended northerly (downstream from the mill site) to the Little Cuyahoga river, where it discharged its waters. Upon July 25, 1833, Crosby and Perkins were the owners of all the lands from the Little Cuyahoga river, at the intersection of the race, to the first perpendicular fall, and from that point northerly to the little Cuyahoga river, the termination of the race. In order to secure the race perpetually to themselves and their heirs and assigns forever from the first perpendicular fall easterly to the Little Cuyahoga river so that the same could not be diverted from the objects intended, they conveyed to Jonathan Sloan, in trust, in fee simple, the legal title to all the lands covered by the waters of the race, together with the lands on each side thereof, of sufficient width to pass and repass along the same with teams and wagons.
 

 The Quaker Oats Company is the owner of the mill sites known as Stone Mill and Cascade Mill; the Akron Belting Company of the site known as the Allen Mill, and the Howard Milling Company of that known as the City Mill. They were owners of these sites in August, 1911, and when this action was brought they and their predeces
 
 *695
 
 sors liad been in possession and control of the Cascade millrace, as the owners of the mill sites, for more than 21 years,. without hindrance from any one, and had maintained, repaired, and operated the same. The race was in the same location that it had been since 1833, and that portion of the race extending from the east line of North Main street, near Federal street, easterly to the Little Cuyahoga river, covered by the waters thereof, exclusive of banks, varied in width from 10 to 100 feet. In other words, the record establishes beyond a doubt that the mill owners had had adverse possession of the race, and title thereto by prescription, for at least 30 years. Moreover, since they had title to the race itself, their interest amounted to more than an easement.
 

 Works constructed for the use of water, consisting of ditches, canals, flumes, or reservoirs, are not in themselves easements, but are land. 2 Kinney on Irrigation & Water Rights (2d Ed.), p. 1462, Section 834. In this authority is found an excellent discussion of this question which differentiates an easement from the ditch or canal itself. As Kinney says: A ditch or canal is land, and, “being substantial, permanent, visible, and tangible, is corporeal.”
 

 “Because a ditch or canal is dug on land in no way changes its character as land. It is still land, although the bed of the same may be sunk below the surface of the land adjoining it. It has the bed and sides still consisting of the same character of soil or rock as that of the adjoining land, and it is as much a part of this land as though the ditch or canal had never been dug. . * * * That
 
 *696
 
 a right of way for a ditch or canal is an easement we will concede, and will fully discuss this subject in a subsequent chapter. The only point which we wish to make here is that the character of property in a ditch, canal, reservoir, or other means of diversion and use of water, is not in and of itself an easement, or servitude, but is a corporeal estate or land, and relative to which any action at law or in equity will lie, which may be maintained as to any other real property. * * *
 

 “Ditches, canals, flumes, and reservoirs used for the conveyance' or storage of water are artificial water courses, lakes, or ponds, and are real property, and the rules of law governing the same are, in general, the same as the rules governing other real property. A ditch, canal, or reservoir is not a mere easement or incorporeal hereditament. It is itself land, for the recovery of the possession of which an action in ejectment will lie the same as for the possession of any other real property.” 2 Kinney on Irrigation & Water Rights (2d Ed.), pp. 1461-1463.
 

 The property right in the water right or usufructuary right is separate and distinct from the property right in the ditch, canal, or other works constructed to divert, conduct, or store the same. Kinney in his work on Irrigation and Water Rights, vol. 2 (2d Ed.), Section 764, says:
 

 “A water right is a species of property in and of itself, and exists separate and independent of the right to the ditch, canal, reservoir, or other works constructed to divert, conduct, or store the water. This is so, although they may be all owned by the same person; and again, the water right
 
 *697
 
 may be owned by one person and the ditch or other works by another.”
 

 Hence the estate granted in the millrace by the mill owners to the defendants was an estate in land, and not a mere easement. The mill owners granted to the Northern Ohio Traction & Light Company, and the Northern Ohio Power Company, their respective successors and assigns forever, “without any warranty, either express or implied, as to title or otherwise, * * * the right and easement to enter upon and occupy the land and estates of the grantors in the Cascade millrace, * * * and to construct and maintain poles, wires, and other structures thereon, proper and necessary for, and to conduct and transmit electrical currents therewith, and to construct, maintain, and operate a railroad thereon with electricity or other motive power, with all its necessary tracks, structures, and appurtenances. ’ ’
 

 Now this grant is of the right to enter upon and occupy forever the land and estates of the grantors in the Cascade millrace, unlimited in the nature and character of the occupancy. It evidences the intention to convey all the right, title, and interest in the bed and banks of the Cascade millrace and the land along the banks which had been occupied by the mill owners and their predecessors in title from ancient times. Hence the estate granted was an estate in land and not a mere easement.
 
 Monmouth
 
 v.
 
 Plimpton,
 
 77 Me., 556, 1 A., 693;
 
 Farrar
 
 v.
 
 Cooper, Ex’r.,
 
 34 Me., 394;
 
 Caldwell
 
 v.
 
 Fulton,
 
 31 Pa., 475, 72 Am. Dec., 760;
 
 Lessees of Barton
 
 v.
 
 Heirs of Morris,
 
 15 Ohio, 408;
 
 Stambaugh, Ex’r.,
 
 v.
 
 Smith,
 
 23 Ohio St., 584.
 

 
 *698
 
 Since the mill owners had title by prescription to this estate in land when they conveyed it to the plaintiffs in error, they gave ample consideration for the contract. The plaintiffs in error, however, seemed to consider that, because the title was defective, and because they endeavored in vain to oust by ejectment proceedings certain parties who were occupying portions of land constituting part of the raceway, there was a failure of consideration for the covenant to maintain the flow of water through the race. However, the conveyance contained no warranty of title. It gave and granted the estate in question only “in so far as the grantors have the right to do so, * * * without any warranty, either expressed or implied, as to title or otherwise, and subject
 
 to
 
 termination of the estate and rights herein granted.” This provision was as express as it could possibly be made by written word. Under it the grantees took the risk of lack of title in the grantors and expressly surrendered any right to hold the grantors liable for defect in title. They also expressly agreed not to dispute the title of the grantors. This being the case, the mill owners are not liable for any claimed failure of title.
 

 It is no defense to an action for purchase money that grantor had only a possessory title to the land conveyed.
 
 Brisco
 
 v.
 
 Minah Consol. Min. Co.,
 
 (C. C.), 82 F., 952;
 
 Mitchell
 
 v.
 
 McMullen,
 
 59 Mo., 252. The grantee of a quitclaim deed cannot recover for failure of title.
 
 McKesson
 
 v.
 
 Hennessee,
 
 66 N. C., 473. In 15 Corpus Juris, at page 1230, Section 38, it is said:
 

 “Since covenants of title are never implied, and do not apply to land not included in the deed, in
 
 *699
 
 the absence of fraud or mistake, if a deed contains no covenants of title, all questions of title are at the risk of the grantee; so that, if the title fails, he is without remedy either at law or in equity against the grantor.”
 

 See
 
 Peters
 
 v.
 
 Bowman,
 
 98 U. S., 56, 25 L. Ed., 91;
 
 Buckner
 
 v.
 
 Street,
 
 (C. C.), 15 F., 365, 5 McCrary, 59.
 

 A vendor of real estate, selling in good faith, is not responsible for the goodness of his title beyond the covenants in his deed.
 
 Smoot
 
 v.
 
 Coffin, 15
 
 D. C., (4 Mackey) 407.
 

 When land is conveyed without warranty, the grantee has no remedy for failure of title, in the absence of fraud.
 
 Botsford
 
 v.
 
 Wilson,
 
 75 Ill., 132.
 

 If a deed contain no covenants and there be no fraud, or mistake of fact, the grantee cannot recover the consideration paid because of failure of title.
 
 Slocum
 
 v.
 
 Bracy,
 
 55 Minn., 249, 56 N. W., 826, 43 Am. St. Rep., 499.
 

 Since the failure of title did not constitute a lack of consideration, we next inquire what was the character of the covenant entered into by the traction company with regard to the maintenance of the millrace. It was a covenant concerning the land conveyed; it was a covenant to repair and maintain the race, made for the benefit of the race itself, and was part of the consideration of the conveyance of the race; it attached to the race and passed as an incident thereto, hence it was a covenant running with the land. 15 C. J., 1240-1249.
 

 A covenant in a deed to a railway company whereby the grantee undertook to maintain two
 
 *700
 
 passways over its road where the grantor should direct, runs with the land for the benefit of which it was made.
 
 Elizabethtown L. & B. S. R. Co.
 
 v.
 
 Killen,
 
 50 S. W., 1108, 21 Ky. Law Rep., 122;
 
 Gibbons
 
 v.
 
 Ebding,
 
 70 Ohio St., 298, 71 N. E., 720, 101 Am. St. Rep., 900.
 

 Now a covenant inserted in a deed poll binds the grantee, his heirs and assigns, when it relates to the premises conveyed.
 
 Hagerty
 
 v.
 
 Lee,
 
 54 N. J. Law, 580, 25 A., 319, 20 L. R. A., 631.
 

 The above considerations completely dispose of the contention of the plaintiffs in error that the mill owners had but a bare easement, and that hence plaintiffs in error had a right at any time to abandon the easement and thereby escape their affirmative obligations. Neither do we concur with the contention that the mill owners, .did not expend the moneys sued for herein. It is true that the money was paid out by the Akron Hydraulic Canal Company, but as a matter of fact the record shows that the canal company acted merely as an agent for the mill owners in the transaction, and was reimbursed by the mill owners for the money expended. Also, the record shows that whatever possession, control, and maintenance of the millrace was exercised by the Akron. Hydraulic Canal Company was exercised by it as agent for the mill owners.
 

 Moreover, the record contains evidence tending to show that plaintiffs in error took possession of the millrace; they received and held the keys to the gates upon the race, of which gates they had actual possession during this period, and they repaired and maintained the flow of water therein
 
 *701
 
 for some 8 years, their men at all times haying exclusive control of the race and its hanks.
 

 Coming to the last contention, plaintiffs in error urge that the contract embodied in the conveyance was silent as to its term of duration, and therefore was terminable at the will of either party. This argument is based upon a false premise. The grant of the interest in the millrace was made to the defendants and to “their successors and assigns forever.” It reserved to the mill owners, “their successors and assigns forever,”, the right at all times to the free and unimpeded flow of the waters of the Little Cuyahoga river through the millrace. In the covenants the defendants agreed to “forever” maintain the flow of water through the millrace and “at all times” to sufficiently maintain the banks of the millrace. The contract, therefore, was not revocable. It constituted a conveyance in fee, “forever,” of the entire title which the mill owners possessed in the land, and one of the covenants which constituted the consideration for the grant was to repair and maintain the race forever. Hence the contract in its express terms is specific as to duration and not terminable at will by either party.
 

 Now the conveyance was deliberately executed and deliberately accepted. There is no concealment, nor fraud, charged in the answer. The defendants knew that they were taking what amounted to no more than a quitclaim deed from the owners. They knew that the mill owners did not warrant title, and yet they executed the contract, took possession under the deed, and proceeded to sell valuable parts of the millrace, and now they
 
 *702
 
 seek to be relieved from the obligation of tbeir covenants.
 

 There being at least a scintilla of evidence upon all of the material allegations made in the petition, the judgment of the Court of Appeals reversing the judgment of the court of common pleas will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Kinkade and Robinson, JJ., concur.