# JOHNSON IRRIGATION CO. v. IVORY, ET AL.

(No. 1784; September 12, 1933; 24 Pac. (2d) 1053)

222

For the plaintiff in error there was a brief by *Ambrose Hemingway, E. E. Enterline,* and *Madge Enterline,* all of Casper, Wyoming, and oral argument by *Messrs. Hemingway* and *Enterline.*

224

For the defendants in error, there was a brief and oral argument by *Philip E. Winter* of Casper, Wyoming.

KIMBALL, Chief Justice.

The plaintiff, an irrigation company, is the grantee of the United States under sections 18 to 21 of

the act of congress of March 3, 1891 (26 Stat. 1101, 43 USCA §§ 946-949) of a right of way for its reservoir and canal for irrigation purposes. Lands which are largely covered by plaintiff's reservoir on its right of way have been granted to defendants by homestead patents subject to the right of way.

Plaintiff claims the right of exclusive possession of its right of way, and brought this action to quiet its title and enjoin defendants from entering upon or occupying any part of the lands covered by the right of way. The petition alleges that defendants have trespassed and are threatening to continue to trespass on part of the right of way, but does not allege that defendants have committed any trespass that has interfered or threatened any that will interfere, with plaintiff's right to occupy its right of way for purposes of irrigation and for the construction, maintenance and care of its canal and reservoir.

Defendants claim the right to occupy and use the lands described in their patents and covered by plaintiff's right of way, subject only to plaintiff's right to occupy and use the right of way for the purpose of irrigation. Defendants' claim is set forth in a cross-petition wherein they allege that plaintiff has trespassed on defendants' lands by occupying them for purposes other than irrigation. The relief prayed for in the cross-petition includes damages for the alleged trespass and an injunction to prevent plaintiff from asserting any right to enclose or exercise dominion over any of defendants' lands except the right to use the right of way for the purposes for which it was granted.

The dispute is over the right to use for agricultural purposes lands lying along the north shore of plaintiff's reservoir. These lands are enclosed by the surveyed marginal line as shown on plaintiff's

maps filed and approved under section 19 of the act of March 3, 1891, supra (43 USCA, § 497) and are a part of the lands described in defendants' patents. There are two approved maps: one showing both ditches and reservoir, the other, on larger scale, showing the reservoir only.

The right of way for the reservoir apparently covers the site of a natural pond or lake formed when waters from surrounding lands drained into a small basin. The "shore line" of this lake is shown within the right of way on the approved map of the reservoir. The reservoir was made by constructing two dams which materially increased the size of the natural basin. One dam is on the east, the other on the south, side of the basin. Except at these dams the margin of the reservoir is the natural ground shore. This fact seems of some importance (see 43 L. D. 317, 320) and will be again referred to. The marginal line of the reservoir right of way, as shown on the approved maps, encloses 465 acres of land. The northerly marginal line is across the lands described in defendants' patents' so that part of those lands are within, and the rest are north of and adjoining, the right of way.

The water confined in the reservoir actually constructed and used by plaintiff does not cover all the land enclosed by the marginal line shown on its maps. The evidence shows conditions in June preceding the trial. The actual water line along the north side of the reservoir was then from 200 to 1300 feet south of the marginal line shown on the maps. The result is that some 80 acres included in defendants' patents and also included in the plaintiff's mapped right of way is dry land suitable for grazing and other agricultural purposes. The right to possession of this land is the matter in dis-

pute. One tract, somewhat irregular in shape, is approximately 1000 feet east and west and 1300 feet north and south, and it is there that defendants' houses are located. One house is 360 feet, the other 260 feet, from the nearest point on the shore line of the reservoir, although they are more than 500 feet south of the north marginal line shown on the maps. The water would have to be raised vertically 1.5 feet to reach defendant's houses, and 2.7 feet to reach the marginal line shown on the maps. From testimony as to the condition of the ground it is to be inferred that the water confined in the reservoir may at some times have been higher than in June preceding the trial, but that the shore line has never been less than 200 feet from defendant's houses.

In the year 1925 plaintiff built a fence enclosing the reservoir and the bordering land. Most of the fence north of the reservoir across land described in defendants' patents is placed 50 feet outside the marginal line of the mapped reservoir. There can be no doubt that the evidence justified a finding that plaintiff built and maintained the fence in order that it might have the exclusive possession and use of the enclosed land for pasture and hunting purposes, and not to protect the reservoir in its use for irrigation or any purpose subsidiary to irrigation. Defendants, by acts and declarations, have always denied plaintiff's right to maintain the fence, or to occupy the enclosed land north of the reservoir, except for purposes incident to irrigation. They have continued to maintain their homes within the enclosure, and so far as they were permitted and had occasion to do so, have used the land for pasture and hunting purposes, but they have done nothing to prevent plaintiff from occupying the land for the purpose of constructing, maintaining

and caring for its reservoir. It may be inferred that the north shore of the reservoir, being a natural ground shore, requires no maintenance or repair work.

The district court found that plaintiff for irrigation purposes had a valid right of way extending 50 feet beyond the marginal limits of its reservoir, described by courses and distances as alleged in plaintiff's petition and as shown by the maps and field notes approved by the Secretary of the Interior. The court also found that defendants were the owners in fee of the lands claimed by them as shown by patents which contain the usual reservation:

"Subject to any vested and accrued water rights for mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local custom, laws and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States."

It was further found that plaintiff's right of way covers a portion of the lands patented to defendants, and "That the plaintiff has at all times asserted and exercised a right of absolute ownership and of exclusive, occupancy and control of fifty feet beyond the high water marginal line of its reservoir and has enclosed that much of the lands of the defendants and cross-petitioners with a fence and within said fence it has placed and kept its horses and cattle during the grazing season, and that thereby the said defendants and cross-petitioners have been deprived of any profitable use whatever of that portion of their patented lands enclosed within said fence and surrounding said reservoir."

The district court's conclusions of law are stated as follows:

"1st. That the plaintiff has a superior and dominant estate in and to its reservoir site and right-of-way for irrigation purposes and for maintenance and protection of its said right-of-way and reservoir; That the defendants and cross-petitioners are the owners by patent from the United States of all of the lands described herein, but said estate is subservient and subject to the superior estate of plaintiff so far as the conflict between the reservoir site and right-of-way and the patented lands of defendants and cross-petitioners are concerned.

"2nd. That the defendants and cross-petitioners have no right to the use of any of the water contained in or flowing through said reservoir and ditches for any purpose whatever.

"3rd. That the plaintiff has no right to pasture, cultivate or otherwise use any of the lands embraced within its right-of-way except for irrigation purposes and for necessary repairs and preservation of its irrigation system, and has no right to interfere with the defendants and cross petitioners in their use of the said lands for agricultural purposes, so long as said use does not interfere with or impair the right of plaintiff to use said lands for irrigation purposes.

"4th. That the defendants and cross petitioners are entitled to an injunction enjoining and restraining the Johnson Irrigation Company, plaintiff, from hereafter in any manner asserting any right to go upon, occupy, use or control, or enclose within a fence any part of the said patented lands of the defendants and cross-petitioners, except insofar as such claim or fencing may be necessary for the con-

struction, maintenance and care of plaintiff's said reservoir."

By the decree the title of plaintiff in and to the lands embraced in its right of way is "quieted in plaintiff and declared to be a superior and dominant title to that of the defendants," and "plaintiff has the right to the use and occupancy thereof for irrigation purposes and for repairs, construction and protection of its irrigation system." The title of defendants in their patented lands is quieted in them, "subject, however, to the dominant estate of the plaintiff in and to its right of way and reservoir site," and defendants "are declared to be entitled to the use and occupancy of all said lands for agricultural purposes, so long as said use and occupancy does not materially interfere with or impair the use of said irrigation system by plaintiff." The plaintiff "is enjoined and restrained from in any manner whatever in the future setting up or asserting any right, title or interest in and to said lands or its said lands or its said right of way excepting in so far as said right to said claim ,possession or right is necessary to plaintiff's use for maintenance of its irrigation system."

The plaintiff brings the case here by proceeding in error, and contends that the decree is erroneous in failing to recognize and confirm plaintiff's claimed right to the exclusive possession and use of the lands in controversy.

Defendants contend that their rights under their homestead entries and patents are superior to plaintiff's right of way for its reservoir. We doubt that defendants are in a position to make this contention. Their answer seems to admit that their patents are subject to plaintiff's rights, and the decree from which defendants do not appeal declares the right of way superior to the patents. The evidence sup-

ports the decree. Plaintiff's right is shown by the approved maps. It is true that these maps were not approved until 1922, while defendants' homestead entries were made in 1919. But under the act of March 3, 1891, as under similar acts for granting rights of way for railroads and pipe lines, the approved map which is intended to be the equivalent of a patent relates back, as against intervening claims, to the date when the map was filed in the local land office for transmission through the General Land Office to the Secretary of the Interior. Great Northern R. Co. v. Steinke, 261 U. S. 119, 43 S. Ct. 316, 67 L. Ed. 564; Richardson v. Midwest Refining Co., 39 Wyo. 58, 70, 270 P. 154. In this case the evidence on the point tends to show that the maps were filed in the local land office and transmitted to the General Land Office several months before the defendants made their homestead entries of the affected lands. In considering the relative rights of the parties we shall, therefore, accept the finding of the district court that the plaintiff's right of way is prior and superior to defendants' patents.

The act of March 3, 1891, *supra,* authorizes the granting of a right of way through public lands "to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof." § 18. The applicant must file with the register of the land office a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such rights of way. § 19. A separate section provides that nothing in the act "shall authorize such canal or ditch company to oc-

cupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance and care of said canal or ditch." § 21. While in section 21 reservoirs are not specifically mentioned, there can be no doubt that the words "canal and ditch" as used here and in some other parts of the act, mean the whole project including the reservoir. Regulations, 36, L. D. p. 569; United States v. Big Horn Land & Cattle Co., (C. C. A.) 17 F. (2d) 357, 365; United States v. Tujunga Water & Power Co., (C. C. A.) 48 F. (2d) 689, 692; Twin Falls Canal Co. v. American Falls R. Dist. (C. C. A.) 59 F. (2d) 19, 23. This section is supplemented by section 2 of the act of May 11, 1898 (30 Stat. 404; USCA, § 951) which provides that rights of way for ditches, canals or reservoirs approved under the act of March 3, 1891 may be used for purposes of a public nature; and may be used for purposes of water transportation, for domestic purposes, or for development of power, as subsidiary to the main purpose of irrigation or drainage. Plaintiff does not claim that it is using its reservoir for any of the additional purposes authorized by the act of 1898, but we mention the act to show that it has not been overlooked, and for the further purpose of showing that Congress has carefully refrained from authorizing the use of a canal or reservoir right of way for purposes not subsidiary to irrigation. See, Kern River Co. v. United States, 257 U. S. 147, 153; 42 S. Ct. 60, 66 L. Ed. 175; House Report, No. 2790, 54th Cong. 2d Session; 28 L. D. 474.

The law plainly prohibits plaintiff from occupying its right of way except for the purpose of its reservoir and for other purposes subsidiary to irrigation. Lands covered by the right of way have been granted to defendants "subject to such right

of way." It appears that defendants have used and can continue to use the lands for purposes prohibited to plaintiff without interfering with plaintiff's use for the purposes for which the right of way was granted. Under the decree of the district court, which recognizes these conditions and permits plaintiff to occupy its right of way for the purpose of the reservoir while allowing defendants to occupy it for other purposes, the lands in question are available for their full, beneficial use, and it would seem that the decree ought not to be disturbed except on clear grounds.

Cases directly involving the question of the relative rights of the owner of a right of way under the act of March 3, 1891, and the owner of lands patented subject to the right of way, are not numerous. The only cases of that kind that we have found (Whitmore v. Pleasant Valley Coal Co., 27 Utah 284, 75 Pac. 748, and Coulsen v. Aberdeen-Springfield Canal Co., 47 Idaho 619, 277 Pac. 542) support the decree in this case. In many other cases where the ditch right of way was acquired by private grant or recognized under U. S. Rev. St. 2339, it is held that the adjoining lands may be used by the land owner for grazing and pasture purposes. See cases cited in Harmony Ditch Co. v. Sweeney, 31 Wyo. 1, at page 5; 222 Pac. 577; Big Goose etc. Ditch Co. v. Morrow, 8 Wyo. 537, 59 Pac. 159, 80 A. S. R. 955. These decisions, however, are not satisfactory authority in the case at bar, because they proceed on the theory that the right of way is a mere easement. It has been declared by the highest authority that the right of way intended by the act of March 3, 1891, is not a mere easement, but a limited fee. Kern River Co. v. United States, 257 U. S. 147, 152; 42 S. Ct. 60, 66 L. Ed. 175. The

rights of the parties must be determined in the light of this declaration.

In stating that the right of way intended by the act of 1891 is more than a mere easement, the court in the Kern River Company case, cites Rio Grande Western Ry. Co. v. Stringham, 239 U. S. 44, 47; 36 S. Ct. 5; 60 L. Ed. 136, indicating that the reasons for the statement are those given for holding that a railroad right of way is substantially a fee. Rio Grande Western Ry. Co. v. Stringham, **supra,** and cases there cited (239 U. S. 47), hold that a railroad right of way under the general right of way act of 1875 (18 Stat. 482, 43 USCA, §§ 934-939), and other similar acts, is more than an easement because the right to the use and possession of the land is continuous and exclusive. A full statement of the reasons, with review of authorities, is contained in New Mexico v. United States Trust Co., 172 U. S. 171, 19 S. Ct. 128, 43 L. Ed. 407. By the railroad right of way acts congress conclusively determined the width of the right of way necessary for railroad purposes and intended that its use should be continuous and exclusive. For instance, the general act of 1875, *supra,* authorized a right of way "to the extent of one hundred feet on each side of the central line" of the road. The reservoir right of way under the act of 1891 is "to the extent of the ground occupied by the water of the reservoir * * * and fifty feet on each side of the marginal limits thereof." § 18; 43 USCA, § 946. Congress has not declared that it is necessary for the canal company to have continuous and exclusive possession and use of more land than is covered by the reservoir, but intended that the boundary of the right of way should be the shore line (14 L. D. 30) in a case where, as in the case at bar, the marginal limit is the natural ground shore, See 43 L. D. 317, 320. This intention is made

clear by the prohibition of § 21, mentioned above. The act allows also fifty feet on the marginal limits of the reservoir for use when necessary in construction and keeping in repair, but it is hardly to be contended that the right to use the fifty feet marginal land is more than an easement. See, 14 L. D. 30; 16 L. D. 425. It was intended that this fifty-foot strip for use in construction and repair should border the boundary of the right of way granted as a limited fee. Unless the boundary of the right of way coincides with the shore, or "marginal limits," of the reservoir, the bordering land would not be of value in construction and repair work. In the case at bar, if plaintiff's contention be correct, this marginal strip of land is several hundred feet above the shore of its reservoir.

It seems, therefore, that the congressional intention will be fully carried into effect by holding that the north boundary of the lands held by plaintiff in fee is the shore, or water line, of the reservoir. In this view the corporeal thing granted to plaintiff is the "ground occupied" by the reservoir. Plaintiff is given the right to the exclusive and continuous use and possession of the land so occupied and, therefore, has a fee and not a mere easement. New Mexico v. United States Trust Co., 172 U. S. 171; 19 S. Ct. 128, 43 L. Ed. 407; Monmouth v. Plimpton, 77 Me. 556, 1 Atl. 693; Metropolitan Ry. Co. v. Fowler, (1893) A. C. 416; Kinney on Irrigation (2d ed.) §§ 833-834; Murphy v. Kerr, (D. C.) 296 Fed. 536; Northern Ohio etc. Co. v. Quaker Oats Co., 114 Oh. St. 685, 152 N. E. 5. Plaintiff's right to possession of the land it holds in fee cannot be questioned by defendants, and is protected by the decree. Plaintiff's right to adjoining land is for uses which may be only intermittent and occasional, and is not a proprietary interest in the land itself. It is in the

nature of an easement appurtenant to the "ground occupied" by the reservoir, and a burden on bordering land owned by defendants. The decree contains nothing that will interfere with plaintiff in the exercise of this right.

While the act of 1891 seems clearly to express the congressional intention above indicated, the Secretary of the Interior, by section 19 (43 USCA, § 947) is authorized to approve the maps which on approval are intended to take the place of a patent to the right of way as there shown. It may be argued that the Secretary's approval of plaintiff's maps is a decision that all of the right of way as shown on the maps is necessary for reservoir purposes, and that it follows from that decision, which cannot be questioned in this action, that plaintiff has the right to the exclusive use and possession of all the land it claims.

In considering this argument, as applied to the facts of the present case, we must keep in mind that the north line of plaintiff's reservoir shown on the approved maps is a meander line intended to coincide with the natural ground shore, and not different from the meander line of a natural lake. It is generally held in such cases that the body of water itself, and not the surveyed meander line, is the true boundary. 9 C. J. 168, 183, 189. In the eye of the law the shore of a body of water, though a shifting line, is just as fixed a boundary as a street or wall. Jones v. Johnston, 18 How. 150, 155, 15 L. Ed. 320. Defendants' patents had the effect of granting lands bounded on the south by plaintiff's right of way shown by the meander line of its reservoir as traced on the approved maps and on the township plat in the land office. Regulations, 36 L. D. 575. Except under special circumstances a patent which refers to a plat showing a meandered

lake or stream as boundary of the land conveyed has the legal effect of a declaration that the land is bounded by the lake or stream. Mitchell v. Smale, 140 U. S. 406; 11 S. Ct. 819, 35 L. Ed. 442; United States v. Lane, 260 U. S. 662, 43 S. Ct. 236, 67 L. Ed. 448. In Mitchell v. Smale, at p. 413, of 140 U. S., 11 S. Ct. 819, the Supreme Court of the United States called attention to the difficulty of following the sinuosities of a water line in surveying and platting a meander line of a lake or stream. The difficulty becomes almost an impossibility where a similar meander line is run along the supposed future water line of a proposed reservoir, as in the case at bar.

We see no good reason for refusing to apply to the facts of the present case the meander line boundary rule. The secretary's approval of maps showing a meander line as the north boundary of plaintiff's right of way had the legal effect of a declaration that the boundary between the land granted in fee to plaintiff and the land retained and thereafter granted in fee to defendants is the shore of the reservoir, and not the meander line shown on the maps. This insures to plaintiff the right of way congress intended to grant, while permitting defendants to enjoy their lands "subject to such right of way."

Another view leads to the same result. If we assume that plaintiff has title in fee to the lands bounded by the surveyed meander line, it must be conceded that it holds on a condition that limits or qualifies the fee. The condition is that the lands shall be occupied solely for purposes of the reservoir and other purposes subsidiary to irrigation. The condition, therefore, is a restriction on the use and occupancy of the lands. We agree that defendants as grantees of adjoining lands, cannot take

advantage of this restriction for the purpose of having any part of the right of way forfeited. Richardson v. Midwest Refining Co., 39 Wyo. 58, 74, 270 Pac. 154. We may also agree that a grantee who takes a limited or qualified fee, liable to be defeated whenever he ceases to use the land for the purposes specified in the grant, may, while the estate continues, have the same rights and privileges as an owner in fee simple. See, State v. Brown, 27 N. J. L. 13, 20; Aumiller v. Dash, 51 Wash. 520, 99 Pac. 583; 10 R. C. L. 652; 21 C. J. 923. From this principle, on which plaintiff relies, it does not follow that a fee may not pass subject to conditions or restrictions which create an easement, or a servitude in the nature of an easement, appurtenant to the grantor's remaining lands. 19 C. J. 910-911; Pack v. Conway, 119 Mass. 546; Clark v. Martin, 49 Pa. St. 289; Webb v. Robbins, 77 Ala. 176, 183; Sims on Covenants, ch. XI. In Whitney v. Union Ry. Co. 11 Gray, (Mass.) 363, 71 Am. Dec. 715, it was said: "Every owner of real property has a right so to deal with it as to restrain its use by his grantee within such limits as to prevent its appropriation to purposes which will impair the value or diminish the enjoyment of the land which he retains." When the retained land intended to be benefited by such a restriction is conveyed, the grantee may enforce the restriction. See note, 21 A. L. R. 1288.

We think congress by restricting plaintiff's use of its right of way must have intended that land disposed of subject to the right of way should be benefited by the restriction. This is in accordance with the policy of permitting the owner of irrigation works across land of another to use the land for all purposes necessary for the operation and repair of the works, but so as to interfere no

more than necessary with the ordinary use of the land by the land owner. Kinney on Irrigation, (2d ed.) § 992; Big Goose etc. Ditch Co. v. Morrow, 8 Wyo. 537, 546, 59 Pac. 159, 80 A. S. R. 955. If plaintiff has the exclusive right of occupancy which it asserts it will continue to maintain its fence around its reservoir and will have the right to fence its ditches, and, in the absence of action by the United States, will retain exclusive possession of the fenced lands for pasture purposes. It is hardly necessary to say that ditches and reservoirs are seldom fenced for such a purpose. If the plaintiff has that right it would be difficult to find a reason for denying the similar right to pipe-line companies under the act of May 21, 1896, 43 USCA, §§ 962-965. If the owners of rights of way for ditches and pipe lines are entitled to assert a right of exclusive possession and use, it is likely that the use of open public lands for grazing purposes would be seriously interfered with in many parts of the state.

If, therefore, the plaintiff has title in fee to all the land bounded by the platted meander line of its reservoir, we think the intention of congress as expressed in the act of 1891 can be carried out by holding that the fee is encumbered by a right in the nature of an easement which is appurtenant to lands patented to the defendants and permits them to use the land in controversy for agricultural purposes in so far as that use does not interfere with plaintiff's use and occupancy for irrigation purposes.

It may be that part of the district court's conclusions of law is defective in phraseology, and its decree based on a wrong theory. When the court speaks of plaintiff's dominant and defendants' servient estates there is ground for the contention that it was considering the whole of the right of way as

a mere easement. But the decree recognizes plaintiff's paramount right to the exclusive possession and use of lands now or hereafter occupied by the waters of the reservoir, and to use and occupy all the lands in dispute for purposes of construction, maintenance and repair of the reservoir. Under our view of the law as applied to the facts and conditions, the decree accords to plaintiff all to which it is entitled, and the criticized language does no harm. See, Rio Grande Western Ry. Co. v. Stringham, 239 U. S. 44, 48, 36 S. Ct. 5, 60 L. Ed. 136.

The decree of the district court will be affirmed. BLUME and RINER, J. J., concur.