NICOLSON v. BROWN et al.

UNITED STATES v. SAME.

Nos. 8098, 8099.

United States Court of Appeals for the District of Columbia.

Argued Jan. 6, 1943.

Decided March 29, 1943.

Mr. Vernon L. Wilkinson, Department of Justice, of Washington, D. C., for appellant United States of America. Assistant Attorney General Norman M. Littell and Messrs. Charles R. Denny, Jr., and Frank J. Dugan, both of Washington, D. C., Attorneys, Department of Justice, and Messrs. George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington D. C. were on the brief for appellants.

Messrs. Alvin L. Newmyer and James T. Crouch, both of Washington, D. C., for appellees. Mr. George R. Jones, of Washington, D. C., also entered an appearance for appellees.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is an ejectment suit. The original plaintiff, appellant Nicolson, sued as successor of the Trustees of the Chesapeake and Ohio Canal Company, to whom the land in suit was conveyed in 1839. The defendants and their predecessors had occupied, improved, and paid taxes on the land for many years before suit, and claimed title by adverse possession. The District Court dismissed Nicolson's complaint. It afterwards granted a "new trial" so as to permit the United States, which claimed title through the Canal Company, to intervene as plaintiff. The United States filed a complaint similar to Nicolson's and against the same defendants. Both the complaint of the United States and that of Nicolson were afterwards dismissed, and the plaintiffs appealed. The facts are not in dispute. The only question argued is whether the court was right in holding that the Canal Company's title was legally capable of being lost by adverse possession.

The land is a triangular piece bounded on the south by Canal Road and on the east by Foxhall Road, formerly Conduit Road, in the District of Columbia. At its

farthest point it is less than seventy-five yards from Canal Road, which borders the canal itself. It is part of a larger tract, roughly parallel with the canal, which the Company's trustees acquired by the same deed. They agreed to "give so much of said lands, and of the earth, stone, timber and gravel and other materials as shall at any time be wanted by * * * said Company or their successors for the making or construction of said Chesapeake and Ohio Canal or any of the works thereof or for the site or sites of the same or any of them," and agreed to sell the remainder of the property from time to time as the Company might direct.

An early Maryland statute which amended the Company's charter in various respects provided, among other things, that "the erection of any fence, wall, or building upon the land of the said company, whether with or without the permission of the said company, however long the same may remain, shall not be deemd nor held in law as an adverse possession, so as to deprive the said company of its rights in or to the said lands."[1] An act of Congress passed in 1850 provides: "That the assent of the United States be, and the same is hereby, given to the [above] act of the general assembly of Maryland, passed at its December session, eighteen hundred and forty-four, chapter two hundred and eighty-seven, entitled 'An Act supplementary to an act entitled "An Act to amend the act incorporating the Chesapeake and Ohio Canal Company," passed at December session, eighteen hundred and thirty-one, chapter two hundred and ninety-seven,' and to each and every provision thereof; and that the same be, and are hereby, extended to so much of the said canal as lies within the District of Columbia, in as full and effectual a manner as if the several provisions aforesaid were hereby formally enacted."[2]

The District Court held that this federal act did not protect the land in suit against loss by adverse possession because the land was "not part of the works of the canal" or of the canal's "right of way or appurtenances," and was "not used for canal purposes nor located so as to be used for such purposes within the meaning of said Act."[3]

■ The Maryland act protected "the land of the said company" against adverse possession. Nothing could be broader.[4] The federal act extended the Maryland act to "so much of the said canal as lies within the District of Columbia." As "railroad" may mean a corporation rather than a track, "canal" may mean a corporation rather than a ditch. The grammatical antecedent and perhaps the approximate meaning of "the said canal," in the federal act, is "the Chesapeake and Ohio Canal Company." The Maryland act deals with the Company's physical property in general and with some of its other concerns as well, including by-laws, collections, and suits. The federal act may be thought to mean that the Maryland act is extended to the Canal Company so far as the Canal Company has property or does business in the District of Columbia. The final phrase of the federal act, "in as full and effectual a manner as if the several provisions aforesaid were hereby formally enacted," strongly suggests that Congress meant to enact for the District of Columbia exactly what the Maryland legislature had enacted for Maryland.

But we need not decide whether the federal act covers all the Company's property, wherever located, within the District. Even if this act is narrower than the Maryland act, we think it covers the land in suit. "Canal" as physical property may mean, according to context, a variety of things; including a ditch, or the water in it, or both, or both plus a tow-path, or all three plus locks and structures,[5] or—as when we say that one company sold its canal to another—all those things plus the

---

[1] Act of March 8, 1845, Md.Laws, 1844–1845, C. 287, § 10.

[2] Act of September 20, 1850, 9 Stat. 467.

[3] We need only mention appellees' contentions that the act does not protect equitable ownership, and that though it prevents loss through "erection of any fence, wall, or building" it permits loss through milder varieties of adverse possession.

[4] Cf. Brown v. Chesapeake and Ohio Canal Co., 73 Md. 567, 601 (appendix); Bond v. Murray, 118 Md. 445, 84 A. 655; Mackall v. Chesapeake & Ohio Canal Co., 94 U.S. 308, 24 L.Ed. 161; Boston & Albany R. Co. v. Reardon, 226 Mass. 286, 115 N.E. 408.

[5] Schuylkill Navigation Co. v. Commissioners, 11 Pa. 202, 204; United States v. Big Horn Land & Cattle Co., 8 Cir., 17 F.2d 357, 365.

adjoining land of the same owner.[6] We think the word had a broad meaning in the federal act. In 1850, when the act was passed, it seemed likely that the canal would operate indefinitely. While it operated, its ditch, tow-path, locks and structures were not in danger of loss by adverse possession. On the other hand, adjoining land like that in suit, which the Company owned but did not use, might easily be lost by adverse possession. If the federal act was not intended to prevent that, it is hard to see what it was intended to prevent. We cannot infer that Congress meant to give protection only where none was needed.

A procedural question not raised by the parties lurks in the record. Nicolson's complaint was dismissed on April 4, 1941. He moved for a new trial on April 12. On April 17 the United States moved to intervene. On May 17 the court granted a new trial, "not on any of the grounds asserted in said motion for a new trial, but to permit the United States to intervene and to permit a retrial of the issues herein with the United States as an intervening plaintiff." If the second trial, the judgment in which is here on appeal, had been merely a new trial of Nicolson's previous suit, the order granting it would have been erroneous because not timely,[7] and we should have had to consider whether such an error can be waived by failure to urge it. But this second trial was in substance a suit between the United States and the defendants. Before Nicolson filed the first suit, the receivers of the Canal Company had contracted to sell the land to the United States. The United States was not a party to and had no proper notice of the first suit. It follows that the United States was not concluded by the first judgment. The "complaint in intervention" which it afterwards filed was in effect an original complaint. The defendants filed an "answer to the complaint in intervention." Throughout the trial which followed, the United States was recognized as the substantial plaintiff. Thus the United States alone, and not Nicolson, entered into stipulations with the defendants regarding the issues and the conduct of the trial. We are unwilling to hold that Nicolson's presence in the second suit as a nominal and an unnecessary party deprived the court of jurisdiction. The issues have been tried, and no useful purpose would be served by requiring them to be retried.

Reversed.

---

[6] Twin Falls Canal Co. v. American Falls Reservoir, Dist. No. 2, 9 Cir., 59 F.2d 19, 23, certiorari denied 287 U.S. 638, 53 S.Ct. 87, 77 L.Ed. 552; Johnson Irrigation Co. v. Ivory, 46 Wyo. 221, 24 P.2d 1053, 1056.

[7] Freid v. McGrath, 76 U.S.App.D.C. 388, 133 F.2d 350.