**UNITED STATES of America, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant.**

**Civ. A. No. 3736.**

United States District Court, D. Wyoming.

Dec. 30, 1954.

Perry W. Morton, Asst. Atty. Gen., Thomas L. McKevitt, Atty., Department of Justice, Washington, D. C., and John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for plaintiff.

John U. Loomis, Loomis, Lazear & Wilson, Cheyenne, Wyo., O'Melveny & Myers, Louis W. Myers, William W. Clary, Warren M. Christopher and Charles H. McCrea, Los Angeles, Cal., for defendant. Frank E. Barnett, New York City, W. R. Rouse, J. H. Anderson, Omaha, Neb., and Henry M. Isaacs, Los Angeles, Cal., of counsel.

KENNEDY, District Judge.

This is an action in which the United States, as plaintiff, seeks an injunction permanently restraining the defendant from using its right of way as a railroad for the purposes of removing gas, oil and minerals therefrom and quieting title to such minerals in plaintiff. The defendant answers in the form of a denial of the claim of plaintiff and sets forth certain affirmative rights claimed in its behalf.

At the trial the parties entered into an agreed statement of facts which eliminated practically all oral testimony except that presented on behalf of the defendant concerning its use of its right of way for the purpose of producing oil and gas as not interfering in any way with the operation of its railroad.

Reviewed briefly, the stipulation of facts set forth the jurisdiction of the court; the corporate organization of the defendant and that it is the successor to all the rights of the original grantee under a right of way over the public domain under the Acts of July 1, 1862, 12 Stat. 489, as amended by the Act of July 2, 1864, 13 Stat. 365, for railroad and telegraph line purposes, and that it has continuously exercised such right up to the present time; that defendant intends to engage in drilling operations leading to the removal of subsurface oil and gas underlying its right of way a few miles west of the city of Cheyenne and that the Wyoming Oil and Gas Conservation Commission has approved defendant's application for a permit to drill on that portion of defendant's right of way; that defendant has not applied for or obtained a lease under the Act of May 21, 1930, 30 U.S.C.A. §§ 301–306, from the United States; and that the matter in dispute between the parties is as to the nature and extent of the property or estate which defendant holds under the Acts of Congress referred to.

In addition to the stipulation the defendant, over the objection of the plain-

tiff as to relevancy, introduced evidence tending to show that the drilling and operation of oil and gas wells on the right of way would in no way interfere with the operation of its railroad and telegraph line facilities. This evidence was admitted over the objection of the plaintiff at the time upon the theory that being a Court-tried case the evidence might be rejected if not found pertinent to the issue involved. After the trial the case was presented to the Court extensively in oral argument and at the conclusion, inasmuch as it had been intimated that briefs had been exchanged by the parties previous to the argument, it was suggested by the Court that such trial briefs should be submitted with such additional addenda as counsel might be advised within a time fixed by the Court. This order has been complied with and the matter is now before the Court for consideration.

It would seem that the particular issue here to be resolved heads into virgin legal territory, as counsel seem to agree that there are no cases which form a precedent as being on all fours with the case at bar. In some respects it would seem unfortunate that perhaps on account of the particular area involved being within the Wyoming District (the location being only a few miles west of the city of Cheyenne) the lot falls to the presiding judge of the United States trial court of such District to first attempt a solution of the problem. Probably the most efficient service that this Court may render is to expedite its journey into the higher Federal Courts so that the rights of the parties may be declared as speedily as possible. With this in view this Court will attempt to state its views and reactions only to the extent that adequate findings and conclusions may be based thereon.

It appears that the original grant to the defendant's predecessor was a right of way to the extent of two hundred feet in width on each side of said railroad where it may pass over the public lands, including necessary grounds for stations, etc. When the grant did not appear adequate to secure construction of the railroad an amended Act was passed in 1864 which continued the original grant as a right of way but also granted to the railroad alternate additional sections on each side in fee simple but reserving or excepting therefrom mineral rights or lands, with certain exceptions.

Scores of cases have been cited by counsel which in a sense touch only the periphery of the exact question here to be determined. It would seem rather unnecessary to discuss them in detail in this memorandum. Suffice it to say that counsel are to be commended for the exhaustive manner in which they have prepared their respective contentions and demonstrated their exhaustive research of the authorities in presenting the case to this Court.

Among the many cases so cited may be mentioned Northern Pacific Railroad Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044, and Great Northern Ry. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836, out of which counsel for plaintiff seem to derive some comfort from the language of these decisions. This is seriously questioned, however, by counsel for defendant inasmuch as the situation calling for a decision in these cases is not analogous to the situation in the case at bar. Two of the cases strongly relied upon by defendant are Territory of New Mexico v. United States Trust Company of New York, 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407, and United States v. Illinois Central R. Co., D.C., 89 F.Supp. 17, affirmed United States v. Illinois Central R. Co., 7 Cir., 187 F.2d 374. Perhaps the latter case comes nearer to suggesting a precedent in the case at bar than any others inasmuch as it definitely decided that the defendant under a right of way originally granted by the United States to a State had a right to extract oil therefrom and that the United States had no present interest in such oil. The New Mexico case, supra, related to the matter of taxation of improvements on a right of way in which the integrity of such right was protected against such taxa-

tion. In the Northern Pacific Railroad Company case, supra, the right of way was again protected against homesteaders filing thereon. In the Great Northern Ry. case, supra, the contest was under the right of way Act of March 3, 1875, 43 U.S.C.A. §§ 934–939, in which it was decided that the right of way under that Act was an easement only and conferred on the grantee no right to oil or minerals underlying the right of way. This latter case, however, should be considered in connection with the fact that after 1871 the United States modified its policy in connection with grants of this character. After this time rights of way were granted with a more restrictive character than is embraced in the one under consideration here, as, for example, in 1884 Congress exercised its authority to grant a right of way through an Indian Territory which contained a proviso that the lands granted should be used for such purposes only as shall be necessary for the construction and convenient operation of the railroad, etc. Various attempts have been made to encroach upon the original grants of right of way but generally speaking the courts have consistently operated to protect integrity of such original grants as, for example, in Union Pacific Railroad Co. v. Laramie Stock Yards Co., 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179, where the attempt was made to acquire title by adverse possession under an Act of Congress authorizing the same, it was held that the Act could not be enforced retroactively as against the original grant. Many of the courts, including that of the Supreme Court, have sought to define this so-called right of way using expressions "determinable right of way with reverter" (if ceased to be used for the original purpose indicated); a "limited" fee; a "qualified" fee; a "base" fee, and it is indicated strongly in these cases and in other texts that the possibility the fee may last forever renders the estate therein a so-called "fee". At least it may be gathered from these authorities that the fee here under consideration being absolute and without restriction except as to possible reverter, is some different sort of a grant other than a mere easement as that term is generally understood.

Some suggestion has been made that the point in controversy might be ruled by Wyoming law inasmuch as the property is located in this state. There seems to be no controlling precedent either in the Wyoming law or the decisions of its Supreme Court. It is not the intention of this Court to indicate that the situation is controlled by the law of the state of Wyoming inasmuch as it involves the construction of a federal statute. However, counsel for defendant derives some comfort in a statement of the Wyoming Supreme Court in Johnson Irrigation Co. v. Ivory, 46 Wyo. 221, at page 239, 24 P.2d 1053, at page 1058, involving the rights of homesteaders in connection with a Congressional grant of rights of way for ditches, canals, reservoirs and irrigation works, in which citation the Court in its opinion uses the following language:

"* * * We may also agree that a grantee who takes a limited or qualified fee, liable to be defeated whenever he ceases to use the land for the purposes specified in the grant, may, while the estate continues, have the same rights and privileges as an owner in fee simple."

Counsel for plaintiff rely also upon administrative precedents as being persuasive and also upon the fact that for years the defendant has never attempted to exercise the right which it now claims, but in the final analysis these points could only be advanced as persuasive and not decisive of the question involved. The courts under a variety of circumstances have held that grants of this character to a railroad may be used for many different purposes without jeopardizing their so-called title under the grant itself; for example, for the construction of saw mills, warehouses, lumber and coal businesses, irrigation ditches, etc., the only limit being that such leases or privileges would not

interfere with the operation of the railroad. The majority of these cases, however, refer to uses of the surface for purposes other than the sole operation of the railroad itself. It would not seem to be a strained construction to say that the use of the surface and the use of the subsurface are equivalent so long as neither interferes with the primary purpose of the grant. And so the main point upon which the decision in the case rests must be in accordance with the contention of the plaintiff that the railroad grantee has only such rights as will permit it to operate as a railroad (excluding all mineral rights), as against the contention of the defendant that it can use its right of way in any way it sees fit except it may not use it in a manner which will interfere with its main purpose in the operation of a railroad. In this respect this Court feels that it must support the contention of the defendant.

It seems significant that when the original grant was amended to include alternate sections on either side of the railroad and therein reserved or excepted mineral rights Congress did not change in any respect the right of way provision, thereby suggesting a plausible theory at least that had it been the intent of Congress to reserve mineral rights under the right of way it would have made the same provision in regard thereto as it did in the grant of contiguous lands. It is apparent that Congress some time after these original grants of right of way were made began to make them restrictive in the sense that they were limited exclusively to the uses necessary for railroad purposes. This likewise would seem to indicate an intent on the part of Congress to change its policy. General Acts of the Congress were passed restrictive in character under which rights of way might be granted over the public domain which are substantially different than the grant in controversy here.

In accordance with the foregoing views the decision of the Court will be for the defendant. Being a case tried to the Court, without the intervention of a jury, it will devolve upon counsel for defendant to formulate findings of fact and conclusions of law, together with an appropriate judgment, which findings and conclusions may include such fundamental declarations as are inherent in the above announced decision, in collaboration with plaintiff's counsel if agreeable and convenient. Such findings, conclusions and judgment may be submitted to the Court on or before January 14, 1955, and an order will be entered accordingly.