**Rene JOURDAN and Elfriede Jourdan, Appellants (Plaintiffs below),**

**v.**

**ABBOTT CONSTRUCTION COMPANY, Appellee (Defendant and third-party plaintiff below),**

**v.**

**STATE HIGHWAY COMMISSION of Wyoming, Appellee (Third-party defendant below).**

**No. 3782.**

Supreme Court of Wyoming.

Jan. 21, 1970.

Robert A. Hufsmith and Gary E. Gowen, Jackson, for appellants.

James E. Barrett, Atty. Gen., Glenn A. Williams, James D. Douglass, Sp. Asst. Attys. Gen., Cheyenne, Pence & Millett, Laramie, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Rene and Elfriede Jourdan, husband and wife, sued Abbott Construction Company[1] for $20,000 damage because defendant had removed some 200,000 cubic yards of earth, rock and soil from their property and reduced the level of their land lower than the Snake River, rendering it useless. The Abbott company answered, denying generally and alleging that it was a road contractor with the Wyoming State Highway Commission, which had designated the area from whence borrowing materials were to have been obtained and asserting that if it had removed any materials from plaintiffs' lands such was at the instance of the commission. After some preliminaries, the Abbott company took steps to bring the commission in as a third-party defendant and thereafter stipulated with it that upon the entering of any judgment in favor of plaintiffs and against Abbott a like judgment would be entered in favor of it and against the commission, which arrangement in effect eliminated Abbott; hereinafter the commission will be designated "defendant."

A motion by defendant for summary judgment was denied and the matter proceeded to trial by jury. At the conclusion of plaintiffs' case defendant moved for a directed verdict on the ground that plaintiffs had shown no ownership of the land and had not established value. This motion was granted; the court directed a verdict for defendant and accordingly entered judgment from which the appeal is taken.

■ The factual background of the controversy is uncomplicated. Defendant freely admits the removal of a large quantity of material from a sand and gravel bar, denominated by plaintiffs as an island,[2]

west of Jourdans' Lot 4 (sec. 34, T. 40 N., R. 116 W., sixth principal meridian), and across the Snake River channel. To prevail in the trial, plaintiffs needed to prove that the bar was a part of their Lot 4 and if that could be done what damage had resulted from the taking of the materials.

Ownership to the disputed area being pivotal, we preliminarily focus on the title history. The Jourdans were the grantees in a 1965 deed from Henry and Lilly Westerhoff, who by mesne conveyances had received the property from James J. Goodrick. He had come into ownership by a February 2, 1938, United States Patent covering "Lots four, five, and seven of Section thirty-four in Township forty north of Range one hundred sixteen west of the Sixth Principal Meridian, Wyoming, containing seventy-five acres and sixty-five hundreths of an acre, according to the Official Plat of the Survey of the said Land, on file in the GENERAL LAND OFFICE." Adjoining Lot 4 on the west was Lot 8 of Section 34, still owned by the United States and ·under the supervision of the Bureau of Land Management. Plaintiffs introduced two relevant land office plats in evidence at the trial. One, filed August 16, 1894, was small scale (40 chains to an inch) and did not disclose the "island." The other, filed December 16, 1963, did show the "island" with the original easterly meander line of the Snake bisecting it. Defendant introduced in evidence a detailed drawing of the area, and plaintiffs say it was from this "the vital information for delineating appellant's [sic] boundaries was derived." A portion of that exhibit is here reproduced together with an inset of a segment of the 1963 plat showing the relative location of Lots 4 and 8.

---

1. Correctly described as C. J. Abbott, Inc.

2. Although plaintiffs call the land in issue an island, Mr. Jourdan testified that there was water on its west side only during high water. An "island" is a body of land entirely and customarily surrounded by water. Payne v. Hall, 192 Iowa 780, 185 N.W. 912, 915; Clark, Surveying and Boundaries, p. 695 (3 ed.) ; 56 Am. Jur. Waters § 504.

Plaintiffs claim the trial court erred in finding that (a) they had not put on a prima facie case they were the owners of the land taken; (b) the main body of the Snake River constitutes a boundary of a fractional lot, rather than the best evidence of the original meander lines, and (c) the plaintiffs had not established value of the property taken. They contend "Mr. Jourdan owns to the middle or thread of the meandered channel of the Snake River, which, according to the evidence, is the thread of the channel existing at the time of the original Government Survey, and 1963 survey to the west of the island in question."

This court in Johnson Irr. Co. v. Ivory, 46 Wyo. 221, 24 P.2d 1053, 1057, held that generally it is the water itself, and not the surveyed meander line, that is the true boundary, saying:

"* * * Except under special circumstances, a patent which refers to a plat showing a meandered * * * stream as a boundary of the land conveyed has the legal effect of a declaration that the land is bounded by the * * * stream. * * *"

Plaintiffs themselves recognize that a meander line is a line run by the government for the purpose of defining the sinuosities of the shore or bank of a body of water and as a means of ascertaining the quantity of land in adjoining fractional areas subject to sale by the government.

■ In Parker v. Farrell, 74 Wash.2d 553, 445 P.2d 620, 622, it was noted:

"* * * the thread or channel of a nonnavigable stream is the boundary line between two parcels of real property. When the course of the stream changes, the boundary line may or may not shift with the stream. If the change is slow and imperceptible so that it may be classified as accretion or reliction, the boundary line shifts. If, however, the change

of the stream is avulsive, the original boundary line remains. * * *"[3]

The statement correctly reflects the law. Hirt v. Entus, 37 Wash.2d 418, 224 P.2d 620, 624; California-Oregon Power Co. v. Beaver Portland Cement Co., 9 Cir., 73 F.2d 555, 569 (affirmed 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356); Clark, Surveying and Boundaries, p. 638 (3 ed.).

■ Plaintiffs insist that they adduced sufficient evidence so that they should have been allowed to present to the jury instructions on the doctrines of accretion and avulsion, and that:

"The facts supporting the doctrine of avulsion appear in the testimony of David A. Evans that there was a channel west of the island and between the meander lines which contained water * *; the property retained its original character at all times known to the witnesses * * *; the change in the River occurred with a Game and Fish Department dike * * *; and the River is known to change and come inside its meander line * * *; this change came about twenty years ago * * *; there was no water between the uplands in Lot 4 and the meander line indicated in the Government Land Office Plat according to Paul N. Scherbel, Registered Surveyor * * *; the original meander lines were re-established in 1963 * * *; and were the same as the original Government Land Office Plat and were identical * * *; according to Pheo Valena Robertson, the Flat Creek used to flow down the *east* side of the island, and the Snake River down the *west* side of the island * * *; and it started to cut a new channel in 1953 * * *; the river gradually changed channels * * *; but the island was not changed in character and was always identifiable as the same property * * *."

Mr. Evans, who came to the area around 1937, said the location of the Snake was

---

**3.** *Avulsion* is the rapid perceptible unusual catastrophic change in the course of a body of water ordinarily moving as a

stream or a river. Clark, Surveying and Boundaries, p. 648 (3 ed.).

then that which it occupied at the time of the trial. Asked when a change had started to occur in the Snake, he answered, "I believe the big change came, probably before my time in here, at the time of the Gros Ventre flood, and it became worse as the Game Department put in their dike." Scrutiny of his testimony discloses that not within his knowledge had the main thread of the channel run west of the "island" although water did run through there sometimes in the early part of the season.

As concerns Mrs. Robertson's testimony, as plaintiffs themselves indicated, she said the Snake "just gradually made a new channel and changed sides of the river."

Thus, it develops that the only evidence pointed out by plaintiffs as supporting their position instead of proving the basis of ownership which they assert actually negates it. Moreover, we have carefully read all the other testimony in the record and find none to the effect that the change of the Snake was avulsive, and, therefore, conclude that the court was warranted in its direction of a verdict for defendants. This being true, the question of damages becomes academic and requires no consideration.

Affirmed.