**Maurice WILLIAMS, Appellant**
**(Plaintiff),**

v.

**Joseph H. WATT and Nellie Arlene Watt,**
**Trustees for the Joseph H. Watt Trust,**
**dated December 30, 1972; and Tim**
**Watt, the Robert E. Watt Trust, Tim**
**Watt and Vance Watt as Co-Trustees,**
**and Tim Watt and Vance Watt as Trus-**
**tees of the Robert E. Watt Trust, Appel-**
**lees (Defendants).**

No. 5799.

Supreme Court of Wyoming.

Aug. 12, 1983.

S. Thomas Throne, Sheridan, for appellant.

Henry A. Burgess of Burgess & Davis, Sheridan, for appellees.

Before ROONEY, C.J., and RAPER,* THOMAS, ROSE and BROWN,** JJ.

ROSE, Justice.

In this appeal we are asked to examine the effect of deed and contract language in order to resolve an ownership-of-minerals issue.

## FACTS

On April 10, 1940 the Federal Land Bank of Omaha, Nebraska entered into a contract for deed with appellant Maurice Williams, pursuant to which it agreed to transfer

* Retired June 13, 1983, but continued to participate in the decision of the court in this case pursuant to order of the court entered June 13, 1983.

** BROWN, J., did not participate in the decision.

ranch land titles to him upon payment of the purchase price. On December 28, 1954, the Land Bank delivered its warranty deed containing the following language.

" * * * [E]xcepting and reserving an undivided one-half interest in all oil, gas, and mineral rights in and under the balance of the land for a period of 20 years from the 10th day of April, 1940, and as long thereafter as oil, gas, or other minerals continue to be produced therefrom or said property is being so developed or operated".[1]

On October 27, 1949 Mr. Williams executed a contract for warranty deed with appellee Joseph H. Watt, undertaking to convey and, by deed dated December 7, 1956, did convey an undivided two-thirds interest to Joseph H. Watt and an undivided one-third interest to Robert E. Watt in certain of the lands which had been included in the Land Bank transaction. The contract and deed contained this provision:

"Excepting and reserving to the first party [Williams], his heirs, successors and assigns, all of the oil, gas and mineral rights running with said lands and to which he is entitled under the present ownership of said lands, and which have not been reserved to the United States or heretofore have been reserved or conveyed by previous owners and as may show of record * * *."

As can be seen, this exception was effected before the base term of the 20-year-or-production condition in the first deed had expired.

The only minerals or interest in mineral rights with which this appeal has any concern whatsoever have to do with those which the Land Bank excepted from its grant. It is certain rights which pertain to these minerals that Williams asserts he

withheld from his subsequent transfer of real property to the Watts. It is conceded that the half of the minerals which were not excepted by the Land Bank were excepted from the deed from Williams to Watts and the Watts make no claim to these minerals.

On April 10, 1960, (20 years from the date of the agreement between the Land Bank and Williams) there had been no production of oil, gas or other minerals from the lands and therefore the Federal Land Bank exception no longer burdened the controversial mineral interest. The trial court held that the disputed half of the minerals became the property of the Watts in fee simple absolute when the contingency expired.

We will reverse, holding that by expressly excepting from the Williams-Watt contract for deed and deed,

"all of the oil, gas and mineral rights * * to which he is entitled under the present ownership of said lands, and which have not been * * * heretofore * * * reserved or conveyed by previous owners * * *",

the parties intended to and did withhold from the grant to the Watts a vested remainder. This remainder was owned by Williams at all times following the Land Bank-Williams transaction until the minerals themselves were automatically transferred to him upon the expiration of the 20-year contingency, no other oil, gas or other minerals then having been produced. When the condition contemplated by the 20-years-or-production provision in the Land Bank contract for deed and deed expired, the minerals became the property of Williams in fee simple by operation of law and thus did not either remain with the Land Bank by reason of any rule against perpetuity proscriptions,[2] nor did they follow the land to its ownership in the Watts.

1. This language was also contained in the 1940 contract for deed between the Federal Land Bank and Williams.

2. Section 34–1–139, W.S.1977 adopts the rule against perpetuities and provides:
"No interest in real or personal property shall be good unless it must vest not later than twenty-one (21) years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. The lives selected to govern the time of vesting must not be so numerous nor so situated that evidence of their deaths is likely to be unreasonably difficult to obtain. It is intended by the enactment of this statute to make effective in

## ISSUE

The appellant Williams describes the issue for our resolve as follows:

"Did the District Court err in holding that the Appellees-Watts were the owners of 50% of the mineral rights in the subject real property despite the facts that: (1) Both Appellant-(Seller) Williams and Appellees-(Buyer) testified that it was their intent at the time of the sale of this property for all minerals to be reserved to Appellant; (2) the deed on its face reserves all of the minerals to Appellant Williams."

### The Court's Identification of the Relevant Questions

We view the essential questions for consideration to be these: When Williams agreed to sell and did sell the land to the Watts in 1949 with delivery of deed in 1956, and, given the fact that the Land Bank's exception of one-half of the minerals was not to terminate until 1960 or until oil, gas or other minerals ceased to be produced, what was the nature and what were the characteristics of the mineral interest or estate that the Federal Land Bank had excepted from its grant to Williams? What present and/or future interest or interests in these minerals did Williams possess after the conveyance from the Land Bank but prior to the expiration of the condition—if any? If, following the Land Bank's exception from its grant, Williams was then possessed, or at some later time was to be possessed, of some sort of mineral interest or estate which he attempted to withhold when he conveyed the land to the Watts, was this such an interest as he then possessed and could lawfully withhold? Finally, did the minerals which were excepted by the Land Bank from its conveyance to Williams ultimately pass to the Watts upon the expiration of the term contemplated by the 20-year-or-production exception—as the trial court held—or did they remain the property of the Land Bank for the reason that the conveyance was void as being in violation of the rule against perpetuities, supra n. 2—or did the minerals then become the property of Williams in fee simple by reason of the purported exception language which is contained in the deed to the Watts?

### Introduction

■ By way of introduction to the decisional aspects of this opinion, it is appropriate to make this observation: All participating justices are secure in their interpretation of the Williams-Watt contract to the effect that it was the intent of these parties that Williams would come into ownership of the remaining disputed minerals when the condition contained in the Land Bank-Williams contract and deed no longer encumbered them. We consider the overriding obligation of this court to be to give effect to this intention of the parties—if that is possible. In fulfilling this obligation, the majority and the concurring justice reach the same result, but, in traveling through the complicated maze of future-interest concepts, we disagree about the labeling of the interest held by Williams as we all undertake to give effect to the intention of the parties. The majority of the justices hold that, contemporaneous with the execution of the Land Bank contract for deed and deed to Williams, Mr. Williams was possessed of a vested remainder. Justice Thomas, on the other hand, would identify Williams' interest as an executory interest.

The majority take issue with the executory-interest theory for the reason that the Wyoming statute (n. 2, supra) which adopts the rule against perpetuities would be violated under this concept. Justice Thomas objects to the majority position because he finds the law to be that there can be no remainder after an estate in fee simple determinable,[3] which estate we all hold to be the interest which the Land Bank possessed in the disputed minerals prior to the expiration of the condition.

The majority concede the historical viability of Justice Thomas' objection, but find

this state the American common-law rule against perpetuities."

3. Restatement of the Law of Property, § 156.

the modern law to be to the contrary—i.e., that a remainder can, in circumstances such as those which confront us here, follow a limited or qualified fee and may be excepted from a subsequent grant prior to the expiration of the qualification. On this issue, Gray, The Rule Against Perpetuities, 4th Ed., § 114, p. 108, n. 3, says that the concept which holds that there can be no remainder following a fee

"must be regarded, under modern conditions at least, as purely artificial * * *."

Thus, in more recent times, the rule against the possibility of an estate remaining after a fee is thought about as an historical anachronism. Indeed, were it not for the perpetuities problem discussed infra, it would not be necessary to distinguish between executory interests and remainders.

In 28 Am.Jur.2d Estates § 197, "Distinctions—generally; from executory interest," p. 341, the text undertakes to distinguish remainders and executory interests and comes to this conclusion:

"* * * Most of the litigation involving remainders, vested and contingent, and executory interests, has been concerned with such questions of construction. Once the question of construction is settled, however, the further question of the technical designation of the future interest—whether it is a remainder or an executory interest and, if a remainder, whether it is vested, vested subject to being divested, or contingent—is one of decreasing significance. *There is a tendency to disregard the historical distinctions between contingent remainders and executory interests,* and some modern statutes in effect abolish the practical distinctions between them. *Also, there is a rule that a limitation will be construed as creating a remainder rather than an executory interest if such can be done consistently with other rules of law."* (Emphasis added.)

Broadly speaking, executory interests or limitations are no longer distinguished from remainders but are grouped with them as future estates, 28 Am.Jur.2d Estates § 337,

pp. 541–544. Justice Cardozo said in *Doctor v. Hughes,* 225 N.Y. 305, 122 N.E. 221, 222 (1919):

"* * * Executory limitations are no longer distinguished from remainders, but are grouped with them as future estates (Real Prop.Law, §§ 36, 37; *Tilden v. Green,* 130 N.Y. 29, 47, 28 N.E. 880, 14 L.R.A. 33, 27 Am.St.Rep. 487), and deeds, like wills, must be so construed as to effectuate the purpose of the grantor (Real Property Law, § 240, subd. 3)."

### *The Land Bank's Estate*

By reason of its exception, the Bank owned a fee simple defeasible estate in one-half of the minerals

We have said that:

"Oil and gas, while in situ, are part of the realty; part of the corpus of the land." *State ex rel. School Dist. No. 1 in Weston County v. Snyder,* 29 Wyo. 163, 212 P.2d [P.] 758, 762 (1923).

See *Burnell v. Roush,* Wyo., 404 P.2d 836 (1965), and *Denver Joint Stock Land Bank of Denver v. Dixon,* 57 Wyo. 523, 122 P.2d 842, 140 A.L.R. 1270 (1942).

In *Denver Joint Stock Land Bank of Denver v. Dixon,* supra, we affirmed the district court's decision, which held that the royalty interest was real and not personal property. See also *State ex rel. Cross v. Board of Land Commissioners,* 50 Wyo. 181, 58 P.2d 423 (1936), and *Picard v. Richards,* Wyo., 366 P.2d 119 (1961), where it was held that a conveyance or reservation of a mineral interest gave title to oil in place.

A landowner has the power to create separate interests in oil and gas by grant or exception, they being leasehold, mineral and royalty interests.[4] It follows that he may create such interests for years, for life, or in fee. See 1A Summers Oil and Gas, Ch. 6, Landowner's Powers and Liabilities, § 136 —Nature of the Legal Interest in Oil and Gas Created by Deed, Exception or Reservation. See also, *Goodson v. Smith,* 69 Wyo. 439, 243 P.2d 163, reh. denied 244 P.2d

---

**4.** 1 Williams and Meyers Oil and Gas Law, § 203.1 (1981).

805 (1952). See *Krug v. Reissig,* Wyo., 488 P.2d 150 (1971), where we recognized a life estate in the minerals.

In a conveyance excepting the minerals from the grant, we said in *Ohio Oil Co. v. Wyoming Agency,* 63 Wyo. 187, 179 P.2d 773, 774–775 (1947):

" * * * It is admitted that a severance of the mineral estate from the surface estate was effected by this conveyance. See Tiffany on Real Property (3d ed.) § 587; Lindley on Mines (3d ed.) §§ 9,812; cases cited in *State ex rel. Cross v. Board of Land Com'rs,* 50 Wyo. 181, 200–203, 58 P.2d 423, 429, 430. 62 P.2d 516. The mineral estate, after severance, is often called the 'mineral fee' (see *Dabney-Johnston Oil Corp. v. Walden,* 4 Cal.2d 637, 650, 52 P.2d 237, 243) * * *."

In *State ex rel. Cross v. Board of Land Commissioners,* 58 P.2d at 430, we referred, with approval, to a case citing Thompson on Real Property, where that author said:

" ' "Since minerals in place are part of the land, the owner of the fee in the land has the absolute right of property in the mines and quarries beneath the surface (citing cases), and all the mineral substances, while thus in place, are things of a real, and not a personal character (citing cases). As we have seen, that part of the land consisting of minerals, or specified minerals, may become the subject of separate ownership by grant of the minerals by the owner of the land, or by a grant of the land with an exception of the minerals, and in either case an estate in fee simple is created in the minerals, as corporeal hereditaments. (Citing cases)." ' [*Barlow v. Security Trust & Savings Bank,* 197 Cal. 263, 240 P. 19, quoting from 1 Thompson on Real Property, § 87.]"

In *Summers Oil and Gas,* supra, the author says:

"Separate estates or interests in oil and gas may be created *for a definite term of years and as long thereafter as oil or gas is produced from the land in paying quantities.*" (Emphasis added.) § 136, supra, p. 282.

As has been noted, the Land Bank's exception was subject to a contingency for an indefinite term, i.e. 20 years and as long thereafter as oil and gas are produced therefrom. Since mineral and surface estates may be severed one from the other under the circumstances of this case, it follows that the Federal Land Bank's exception severed the minerals from the land conveyed to Williams.

In his brief and argument, appellant Williams reaches the erroneous conclusion that the contingency contained in the Land Bank grant to Williams expressed a term for years which was not a freehold interest.[5] From this faulty term-for-years assumption, it is reasoned that, since it was necessary that the fee be held to reside in someone, it must be in Williams and therefore he could and did reserve it when he executed the warranty deed to the Watts. Even though this court and Williams come to the same ultimate result—i.e., that Williams owned an exceptable interest which he could and did except—we do not travel the same path in order to arrive there.

Appellant Williams represents that at the time of the Land Bank's deed to him " * * * 100% of the minerals became vested in Maurice Williams, subject to a twenty (20) year term interest in 50% of the minerals held by the Federal Land Bank."

He goes on to say:

"The Federal Land Bank reserved an undivided one-half interest in the minerals for a period of twenty years. 'Every estate which must expire at a period certain and prefixed, by whatever words created, is an estate for years.' 2 Blackstone, Commentaries on the Common Law, 143, quoted in *Ralston Steel Car Company v. Annie M. Ralston,* [112 Ohio

---

5. We have held that a term for years is not a freehold interest. *King v. White,* Wyo., 499

P.2d 585 (1972).

St. 306], 147 N.E. 513, 516, 39 ALR. 334, 338 (1925). The interest reserved by the Federal Land Bank is an estate for years. An estate for years is not a free-hold interest. *King v. White,* 499 P.2d 585. (Wyo.1972).

"Since the Federal Land Bank reserved only an estate for years in 50% of the minerals, seizen to 100% of the minerals had to be vested in someone at the time of the conveyance from the Federal Land Bank to Maurice Williams. Because a term interest is not a freehold interest, the minerals could not have been vested in the Federal Land Bank. All of the mineral rights were vested in Maurice Williams.

"Maurice Williams had a present vested interest in 100% of the minerals, subject to a twenty-year estate for years in 50% of the minerals reserved by the Federal Land Bank. See Bergin and Haskel, Preface to Estates and Land and Future Interest, p. 41 (Foundation Press 1966).

"Maurice Williams owned the entire mineral estate. He owned 50% of the minerals in fee simple absolute, and 50% of the minerals in fee subject to an estate for years. On April 10, 1960, when the term of years held by the Federal Land Bank expired, Maurice Williams became owner in fee simple absolute of 100% of the minerals in the subject lands."

The exception in the Land Bank's grant to Williams did not describe an estate for years and, during the life of the contingency, a determinable fee interest in the minerals did in fact reside in the Land Bank and *the fee estate was not held by Williams.*

The term of the contingency was not definite as the appellee contends. Had there been production within the base period, the Federal Land Bank's right to save, keep and dispose of its one-half of the disputed minerals would have continued for such a period of time as could only be considered to be beyond ascertainment when either of the deeds with which this appeal is concerned is executed and delivered. The appellant was therefore in error in making the assumption that the contingency was for a term of years and that for *this* reason fee title to 100% of the minerals was in Williams at all times following the grant from the Federal Land Bank.

As we have previously noted, this court has on other occasions inquired into the status of an oil and gas lease which conveys such a mineral interest to its lessee as that which is retained by a grantor who excepts minerals from a grant by deed. In *Torgeson v. Connelly,* Wyo., 348 P.2d 63, 68–69 (1959), where the court was concerned with an oil and gas operating agreement with a primary term of 20 years and

" ' * * * so long thereafter as oil and gas and hydrocarbon substances are produced in commercial quantities,' "

the agreement undertook to grant the exclusive right to drill in accord with a federal lease. The court was of the opinion that

" * * * it in effect conveys a portion of the lease or the rights thereunder and constitutes real property."

We held in Torgeson, supra, that leases for a limited term are personalty, while leases for an indefinite period are realty. In that same opinion we said, in referring to our holding in *Denver Joint Stock Land Bank of Denver v. Dixon,* supra:

" * * * We noted *Dutton v. Interstate Investment Corporation,* Cal.App., [19 Cal.2d 65], 113 P.2d 492 and *Arrington v. United Royalty Co.,* 188 Ark. 270, 65 S.W.2d 36, 90 A.L.R. 765, as holding that leases for a limited term of years had been held to be personalty * * * " 348 P.2d at 68,

but that

" * * * [t]he Dutton and Arrington cases both held that leases for an indefinite term had been considered to be realty, the latter indicating that the term of the lease is indefinite if the contract provided 'and so long as oil and gas is produced.' " (Emphasis added.) 348 P.2d at 69.

It was said in *Arrington v. United Royalty Co.,* 188 Ark. 270, 65 S.W.2d 36, 38, 90 A.L.R. 765 (1933):

" * * * It seems, also, that whether the royalty, when severed from the reversion,

is to be deemed real or personal property, depends upon the duration of the lease. If the oil and gas lease is for a term of years expiring at a certain time, it is a chattel real, and the severed royalty would be personal property; *but, where the lease may endure for an indeterminate period, it creates an estate in the nature of a qualified fee, and the royalty reserved would be an interest in realty.* "*We have held that leases given for a definite period in which exploration and discovery of the mineral might be made, to continue as long thereafter as oil and gas is produced conveys not merely a license but an interest and easement in the land itself. Standard Oil Co. v. Oil Well Salvage Co., 170 Ark. 729, 281 S.W. 360; Clark v. Dennis, 172 Ark. 1096, 291 S.W. 807; Henry v. Gulf Refining Co., 176 Ark. 133, 2 S.W.(2d) 687; and Henry v. Gulf Refining Co., 179 Ark. 138, 15 S.W.(2d) 979.*" (Emphasis added.)

Accordingly, the exception for 20 years and as long thereafter as oil, gas or other minerals continue to be produced therefrom constituted a real-property interest in the Land Bank.

There is no doubt but that such an exception as that contained in the Land Bank's deed is acceptable to real property and to mineral and oil and gas law. The estate structured by such an exception is a base or determinable fee which is defeasible at the end of the base term or—in the event production is attained—when production ceases. The Restatement of the Law of Property calls it an "estate in fee simple determinable." Restatement of the Law of Property § 44, p. 121.

"* * * [A] 'determinable,' 'qualified,' or 'base' fee is an estate limited to a person and his heirs, with a qualification annexed to it providing that such estate must determine whenever that qualification is at an end. Because the estate may last forever, it is a fee; and because it may end on the happening of an event, it is called a 'determinable or qualified fee.'" 28 Am.Jur.2d Estates § 22.

It was said in *United States v. Union Pacific Railroad Company,* 230 F.2d 690, 694 (1956), rev'd on unrelated grounds:

"Generally the terms 'limited', 'determinable', 'qualified', or 'base' fee, as applied to the title of real estate, are used synonymously. Because of the possibility that it may endure forever, the owner of such an estate, so long as it exists, even though title may revert upon the happening of a condition, has the same rights as an owner in fee simple and may remove underlying minerals. 19 Am.Jur., Estates, Secs. 28, 30, 31; 31 C.J.S., Estates, §§ 9, 10; Restatement of Property, Sec. 193, Comment (h); *United States v. Illinois Central R. Co.* [D.C., 89 F.Supp. 17], supra; *Frensley v. White,* 208 Okl. 209, 254 P.2d 982; *Davis v. Skipper,* 125 Tex. 364, 83 S.W.2d 318; *Johnson Irrigation Co. v. Ivory,* 46 Wyo. 221, 24 P.2d 1053; D.C., 126 F.Supp. 646."

The existence of an estate in fee simple determinable requires the presence of special limitations. Restatement of the Law of Property, § 44, p. 121. The term "special limitation" denotes that part of the language of a conveyance which causes the created interest automatically to expire upon the occurrence of a stated event. Restatement of the Law of Property, § 23, p. 55. An estate in fee simple determinable may be created so as to be defeasible upon the occurrence of an event which is not certain ever to occur. Restatement of the Law of Property, § 44, p. 125.

As we have seen, we approved the *Arrington v. United Royalty* rule in *Denver Joint Stock Land Bank of Denver,* supra, where the Arrington court said:

"* * * [W]here the lease may endure for an indeterminate period it creates an estate in the nature of a qualified fee * *." 65 S.W.2d at 38.

Chapter 4 of the Restatement of the Law of Property, pp. 117–118, provides:

"Introductory Note: An estate in fee simple defeasible is defined as an estate in fee simple which is subject to a special limitation, a condition subsequent, an ex-

ecutory limitation or a combination of these restrictions.

"The estate in fee simple subject to a special limitation is also designated as an 'estate in fee simple determinable.' It expires in accordance with its terms. It ends automatically upon the occurrence of the event stipulated in its limitation."

In *Baker v. Hugoton Production Company,* 182 Kan. 210, 320 P.2d 772 (1958), the grant of a mineral interest from A to B carried the proviso that it was to be held by B for a term of twenty years and as long thereafter as oil, gas or either of them, are being produced from said land.

The court held that the instrument grants

" * * * a base or determinable fee in the oil, gas and other minerals in place * *." 320 P.2d at 774.

In *Wilson v. Holm,* 164 Kan. 229, 188 P.2d 899, 904 (1948), it was said:

" * * * [I]t should be stated that in this state a deed, conveying oil and gas in place for a fixed term of years and so long thereafter as either or both are produced in paying quantities, creates a base or determinable fee and that title to the estate so created vests immediately upon the execution and delivery of such an instrument but remains defeasible in the event of cessation of production, [citing a Kansas case]."

In the case at bar, the Land Bank's exception carried no restriction as to use—only a condition which made it subject to the possibility of defeasance. It was, therefore, a determinable qualified or base fee.

### Characteristics of a Base or Determinable Fee

"A determinable or qualified fee has all the attributes of a fee simple, except that it is subject to be defeated by the happening of the condition which is to terminate the estate." 28 Am.Jur.2d Estates, Determinable Qualified or Base Fee, § 26,

Attributes and incidents—generally: rights of holder, p. 103.

■ We said in *Johnson Irrigation Co. v. Ivory,* 46 Wyo. 221, 24 P.2d 1053, 1058 (1933):

"We may also agree that a grantee who takes a limited or qualified fee,[6] liable to be defeated * * * may, while the estate continues, have the same rights and privileges as an owner in fee simple."

In the Restatement of the Law of Property § 49, p. 170, it is said:

"The privilege of the owner of a possessory estate in fee simple defeasible to use the land [minerals in the instant case] is identical with that of an owner of a possessory estate in fee simple absolute except that the privilege is limited by a duty not to commit waste."

The Restatement goes on to say:

"Except as modified by the terms of the limitation creating an estate in fee simple defeasible, the power and the privilege of the owner of such an estate to create an interest in the affected land are identical with those of an owner having an estate in fee simple absolute therein, but all interests so created are subject to the defeasibility which existed as to the estate of the transferor." Restatement of the Law of Property § 50, p. 173.

We conclude that the Federal Land Bank, in excepting one-half of the minerals from the grant to Williams

" * * * for a period of 20 years * * * and as long thereafter as * * * minerals continue to be produced * * * "

was possessed of an estate in fee simple in the excepted minerals subject to the qualification expressed in the deed. It was during the life of the qualification that Williams conveyed the land to the Watts and Williams did not hold fee title to the minerals during the life of the contingency. That freehold interest resided in the Federal Land Bank, subject to the contingency.

6. In an exception in a deed, it would be the grantor who possessed the fee simple determinable estate.

*Williams' Interest—A Vested Remainder*

After the grant from the Land Bank, Williams' interest in the disputed minerals is properly identified as a vested remainder.

I

Characterization of various interests based upon historical concepts

In its deed to Williams, the Land Bank excepted:

" * * * an undivided one-half interest in all oil, gas, and mineral rights in and under the balance of the land for a period of 20 years * * *, and as long thereafter as oil, gas, or other minerals continue to be produced therefrom or said property is being so developed or operated * * *."

As has been noted, the interest held by the Land Bank following the grant is properly identified as a fee simple determinable. Once it is established that the Land Bank withheld a determinable fee in the mineral estate, classical concepts of property law (absent statutory rule against perpetuities proscriptions), disassociated from the unique characteristics of mineral law, would indicate that the interest created in Williams be identified as an executory interest. Given historical guidelines, the only other designations for Williams' interest are a possibility of reverter and a remainder.

■ It is conceded that Williams' interest cannot be labeled a possibility of reverter, because a possibility of reverter is such an interest as is *retained by the transferor,* following the conveyance of a fee simple determinable. Simes and Smith, The Law of Future Interests, 2d Ed., § 281 (1956); 28 Am.Jur.2d Estates § 22; Restatement of the Law of Property, § 154(3) (1936). Since the disputed interest was transferred to Williams, rather than retained by the Land Bank, it cannot properly be designated a possibility of reverter.

Under antiquated historical concepts it could be—and in Justice Thomas' concurring opinion is—argued that a remainder is likewise an inappropriate designation of Williams' interest for the reason that a remainder cannot follow a fee. Simes and Smith, supra, § 103; 28 Am.Jur.2d Estates § 196; Restatement of the Law of Property, § 156(2). The justification for this rule is that once the owner of an estate in fee simple conveys his estate in fee simple, there is nothing left to constitute a remainder. Bergin & Haskill, Preface to Estates in Land and Future Interests (1966), p. 72.

In Simes and Smith, The Law of Future Interests, 2d Ed., § 103, the authors say:

"The second characteristic [of a remainder] is that there can be no remainder after a fee simple. This is true even though the fee simple be subject to a special limitation. This is explainable only on historical grounds. All fees simple were regarded as of the same quantum and infinite duration. Hence it was thought that, when the fee simple had been given, no 'remnant' could be left to grant or devise."

Once the possibility of reverter and the remainder have been ruled out as appropriate labels for Williams' interest, it follows from these traditional principles that Williams should be held—on historical grounds—to have possessed an executory interest in the mineral estate excepted by the Land Bank. The Restatement of the Law of Property, § 158, says:

"(1) An executory interest is any future interest created by an executory limitation (defined in § 25).

"(2) Executory interests as defined in Subsection (1) include all future interests, other than remainders * * * which can be created in a transferee."

Section 25 of the Restatement of the Law of Property provides in part:

" * * * [T]he term 'executory limitation' denotes that part of the language of a conveyance, by virtue of which

    \*     \*     \*     \*     \*     \*

"(b) an estate in fee simple determinable, * * * concurrently with its expiration, is to be succeeded forthwith by another interest in a person other than the conveyor or his successor in interest."

The exception by the grantor of a determinable fee and the resulting interest in the

grantee are discussed in 28 Am.Jur.2d Estates § 37:

"By reservation or exception.

"While a fee simple determinable is created by the grant of the fee simple determinable to the grantee, thereby reserving the possibility of reverter to the grantor, where an attempt is made to reverse the positions of the grantor and grantee by excepting a determinable fee from the grant, the grantor is held to take a determinable fee, but the grantee takes a future interest in the nature of a springing use, rather than a possibility of reverter, which future estate may, unlike a possibility of reverter, be subject to the rule against perpetuities."

An executory interest, by definition, does not vest so long as it remains a future interest. Simes and Smith, supra, § 221. Consequently, all executory interests are subject to invalidation by the rule against perpetuities. Gray, The Rule Against Perpetuities, 4th Ed. (1942), § 317. To say that a rule-against-perpetuities result is contrary to the intentions of the parties is of no avail, because the rule against perpetuities always operates to frustrate the parties' intentions.

Despite the foregoing conclusion that the exception by the grantor of a determinable fee may subject the granted executory interest to problems with the rule against perpetuities, only a few courts have found such interests to be void. *Walker v. Marcellus & O.L. Ry. Co.,* 226 N.Y. 347, 123 N.E. 736 (1919); *Victory Oil Co. v. Hancock Oil Co.,* 125 Cal.App.2d 222, 270 P.2d 604 (1954); 2 Williams and Meyers, Oil and Gas Law (1981), § 335, pp. 177–180. Many cases simply assume the validity of these interests without any discussion of the rule against perpetuities. 2 Williams and Meyers, supra at 180, and cases cited therein. A recent Texas case found that in such situations the law implies that the grantor conveyed his entire estate to the grantee, who

then regranted a determinable fee to his grantor. This fictitious regrant resulted in a possibility of reverter in the original grantee which was valid under the rule against perpetuities. *Bagby v. Bredthauer,* Tex.Civ.App., 627 S.W.2d 190 (1981). A number of other courts, while not dealing directly with an excepted determinable fee, have held that conveyances in the commercial context are exempt from the rule against perpetuities. *Camerlo v. Howard Johnson Company,* 545 F.Supp. 395 (W.D. Pa.1982); *Forderhause v. Cherokee Water Company,* Tex.Civ.App., 623 S.W.2d 435 (1981), rev'd on other grounds 641 S.W.2d 522, 526 (1982); *Producers Oil Company v. Gore,* Okl., 610 P.2d 772 (1980).

In view of the fact that the rule against perpetuities is embodied in a statute [7] and in the Constitution [8] in Wyoming, this court is without authority to carve out an exception to the constitutional and statutory provision or to circumvent the Constitution and statute through the inference of a fictitious regrant or by the utilization of any other fictitious device—and it is at this juncture that the majority parts company with Justice Thomas.

In light of Justice Thomas' concurring opinion, it is well to pause here and further explore the perpetuities problem. It is worth noting that a holding designating Williams' interest as "executory" and thus violative of the rule against perpetuities would have the result of finding the Land Bank to be possessed of the disputed minerals—a result which was not contemplated either by the parties or the Land Bank.

Wyoming has adopted the common-law rule against perpetuities through § 34–1–139, supra n. 2. This statute implements Art. 1, § 30 of the Wyoming Constitution. See n. 8. In any effort to circumvent the rule against perpetuities by fiction or otherwise, or to carve out an exception to the rule—for any reason—we are first off confronted with well-established rules having

---

7. See n. 2.

8. Article 1, § 30 of the Wyoming Constitution provides:

"Perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed."

to do with the necessity to give effect to statutory and constitutional provisions.[9]

We said in *Yeik v. Department of Revenue and Taxation,* Wyo., 595 P.2d 965, 968–969 (1979):

"* * * It is the duty of courts to endeavor by every rule of construction available to ascertain the meaning of and give full force and effect to the legislative product. 1A Sutherland, Statutory Construction, § 21.16 (fn. 2) (1972). The legislature will not be presumed to intend futile things. *De Herrera v. Herrera,* Wyo. 1977, 565 P.2d 479; See West's Digest System, Statutes, Key Number 212.4.",

and in *McGuire v. McGuire,* Wyo., 608 P.2d 1278, 1285 (1980), we said:

"It is this court's obligation to make sense out of a statute and give full force and effect to the legislative product. *Yeik v. Department of Revenue and Taxation,* Wyo.1979, 595 P.2d 965. In construing statutes, the intention of the law-making body must be ascertained from the language of the statute as nearly as possible. *Wyoming State Treasurer v. City of Casper,* Wyo.1976, 551 P.2d 687. We must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation."

With respect to the construction, operation and enforcement of constitutional provisions, we have said in *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 173 P. 981, 991 (1918):

"The general principles governing the construction of statutes apply to the construction of Constitutions. * * * And the fundamental purpose in such construction is to ascertain the intent of the framers and the people who adopted it, and give effect thereto."

In *Schaefer v. Thompson,* 240 F.Supp. 247, 253 (1964), it was said:

"* * * In construing constitutional provisions, the fundamental purpose is to give effect to their purpose and intent. Courts will not ignore the general spirit of the instrument."

Since the rule against perpetuities is applicable to executory interests, and since Wyoming's statute § 34-1-139, adopts the rule, the only question—with respect to whether the interest at hand should be designated as executory—is whether, under the exception by the Land Bank, the interest would offend the statutory rule. In this case, we must hold it would. As we have said, one of the characteristics of the executory interest is that it does not vest until possession. Under the Land Bank contingency language, there is no way to know that the interest in question will vest

"not later than twenty-one (21) years after some life in being at the creation of the interest * * *" § 34-1-139,

and thus, if identified as executory, the interest is void as being in violation of the rule against perpetuities and—in which case—the intentions of the parties would be thwarted because fee title to the disputed minerals would remain in the Land Bank.

## II

### Characterization of the interests created by the grant based on the attributes of the mineral estate

The discussion in Part I of this topic focuses exclusively on historical concepts

---

9. Justice Thomas in his concurring opinion advocates "cutting through the intricacies of the common law" by following the suggestion of 2 Williams and Meyers Oil and Gas Law, § 335, p. 185 (1981) where it is said:

"We believe, therefore, that the courts should simply exempt interests following granted or reserved defeasible term interests from the Rule, on the straight-forward basis that they serve social and commercial convenience and do not offend the policy of the Rule against Perpetuities."

Justice Thomas says:

"While this approach apparently has not been taken by any other court, it does seem that there is a good deal of merit in having the same result in an instance in which the determinable fee is created by exception as in the instance in which it is created by grant. I am disposed to advocate such an approach as a rational and appropriate method of *cutting through the intricacies of the common law* in order to effectuate the intent of the parties." (Emphasis added.) 668 P.2d at 638.

which are applicable to the interests created by deed in the Land Bank and Williams. If we were to temper these historical concepts by considering the unique attributes of a mineral estate, then the interest that Williams held following the Land Bank grant authoritatively and logically may be designated as a "vested remainder."

As we have said, the Land Bank withheld a present fee interest in the mineral estate for 20 years and so long thereafter as production continues. An analogous example in the surface estate context would be a grant of Blackacre from A to B, reserving to A a present fee interest in Blackacre so long as no gambling occurs on the premises. A would own a fee simple determinable in Blackacre and B would have an executory interest. However, B's interest would be void under the rule against perpetuities, with the result that A would possess Blackacre in fee simple absolute.

The interest in B in the above example is typical of the vast majority of executory interests. It is limited upon a condition precedent not certain ever to be fulfilled and it follows an estate in fee simple not certain to end. Gambling may never occur on Blackacre. Jones, The Rule Against Perpetuities as it Affects California Oil and Gas Interests, 7 U.C.L.A.Law Rev. 261, 265 (1960). In contrast, the event upon which Williams is to take the mineral estate is one certain to occur. Production of minerals will eventually cease; the only unknown is the time of cessation. When production of minerals ceases, the estate in the Land Bank automatically terminates. There is no doubt that the Land Bank's estate in the excepted minerals will eventually come to an end. See Jones, supra at 265–266.

### Remainder Interest

Since the mineral estate in Williams differs significantly from the typical executory interest in Blackacre, it makes sense to call it something other than an executory interest. It is undisputed that the interest retained by the Land Bank is of a lesser duration than its original estate. The Land Bank excepted an estate which will eventu-

ally terminate, either because production was halted (for whatever reason) or the recoverable. minerals were exhausted. Thus, *some* interest will remain after the estate excepted by the Land Bank expires and it is that interest which was conveyed to Williams. If Williams' interest satisfies all of the other requirements of a remainder, it should be possible, conceptually, to *call* it a remainder. According to Simes and Smith, supra, § 103, the other characteristics of a remainder are:

1. The remainder is always created by express limitation or by implication of fact and by the same instrument which creates the preceding estate.

2. At the time of its creation, the remainder must be capable of taking effect in possession at the expiration of the preceding estate, although it does not terminate the preceding estate.

3. The remainder does not normally divest or cut short the preceding possessory estate.

Williams' interest was created by express limitation in the same deed that created the preceding estate in the Land Bank, and he stands ready to take possession upon the expiration of the Land Bank's estate. In addition, the estate in the Land Bank will terminate naturally upon the exhaustion of recoverable minerals or the cessation of mineral production for whatever cause. With only a little exercise of property-law imagination, the fee simple determinable in the mineral estate may be analogized to the ordinary life estate. When the minerals "die" (the passage of 20 years or the cessation of production), the present estate in the Land Bank expires and passes automatically to Williams. In light of the above discussion, it is therefore reasonable and proper to identify an interest in a *mineral estate* following a determinable fee as a remainder without doing impermissible damage to traditional common-law concepts.

### Vested Versus Contingent

■ If Williams' interest is properly identified as a remainder, the next question

is: What kind of a remainder did Williams possess over and above the interest excepted by the Land Bank?

As discussed above, the event upon which Williams will take is certain to occur. The only unknown is when the event will occur. In 28 Am.Jur.2d Estates § 242, p. 396, it is said:

"The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect."

A remainder is not rendered contingent merely because the time at which the estate will become possessory is uncertain. Section 243 of 28 Am.Jur.2d Estates provides:

"There is a definite distinction between the uncertainty which makes a remainder contingent and the uncertainty of the estate's ever taking effect in possession, which is incident to even a vested remainder. In a contingent remainder, the *right* to the estate is uncertain, while in a vested remainder, the time of possession and enjoyment being deferred, there is an uncertainty as to whether the *estate* will ever be enjoyed in possession. It is in this respect only that a vested remainder is contingent and expectant; for, unlike a contingent remainder, it is vested in right, and the remainderman has an immediate right of future enjoyment. Although it may be uncertain whether a remainder will ever take effect in possession, it will nevertheless be a vested remainder if the interest is fixed. It is the uncertainty of the right of enjoyment, and not the uncertainty of its actual enjoyment, which renders a remainder contingent and distinguishes it from a vested remainder."

See also Jones, supra at 266–267.

Bergin and Haskell, Preface to Estates in Land and Future Interests, supra at 71, identify two requirements for a vested remainder: (1) that there is no condition precedent to the future interest becoming a present estate other than the natural expiration of the prior life estate [or fee tail] and (2) that it is theoretically possible to identify who would get the right to possession if the prior estate should end at any time. Since the condition upon which Williams will take a present estate is certain to occur, and since the condition is the natural expiration or "demise" of the prior mineral estate, then Williams' estate is vested rather than contingent. Since Williams' estate was vested at the time of its creation, it is valid under the rule against perpetuities.

### Conclusion

We of the majority are, by this discussion, forced to the observation that we now find ourselves playing games with respect to these future-interest brain twisters—games in which only real-property professors should be permitted to indulge themselves. Suffice it to say, for purposes of disposing of this appeal, that a limitation will be construed as creating a remainder rather than an executory interest if such can be done consistently with other rules of law. 28 Am.Jur.2d Estates § 197, p. 341. Certainly this may be accomplished here. If, on the other hand, we were not able to come to the conclusion which is reached by the majority in this case, we would not be able to give effect to what all justices acknowledge was the intent of the parties. This is so because the interest remaining after the determinable fee would, if it were designated an executory interest, be in violation of the rule against perpetuities and therefore void. This would leave fee title absolute in the Land Bank—a result which would defeat the intent of all parties.

Williams' interest, after the Land Bank exception, was a vested remainder which was exceptable from the grant to the Watts

and when the contingency in the Land Bank deed expired, the minerals became his in fee simple absolute.

Reversed and remanded for entry of an order which will give effect to this opinion.

THOMAS, Justice, specially concurring.

I concur in the result reached by the majority of the court in this case. I must, however, part company from the other members of the court with respect to the rationale for this decision. The difference between my views and those of the majority is over the most appropriate technique to avoid the rule against perpetuities which has been adopted by statute in Wyoming. Section 34–1–139, W.S.1977 (quoted above in the majority opinion). All of us are in accord that the application of the rule against perpetuities would achieve a frustration of the intent of the parties in this instance. That result is intolerable. None of the parties in this case want the Federal Land Bank of Omaha, Nebraska, to own the mineral estate which is in issue.

I cannot accept the recognition of a vested remainder interest in Williams following a determinable fee. My position is expressed in the following language found in Restatement of Property, § 156, p. 535 (1936):

"* * * The word 'remainder' does not include a future interest which becomes a present interest, if ever, upon the expiration of an estate in fee simple determinable, or of an analogous interest in a thing other than land, or of an estate in fee simple conditional."

Citing *Madison v. Larmon,* 170 Ill. 65, 48 N.E. 556 (1897), overruled on another point *Harrison v. Weatherby,* 180 Ill. 418, 444, 54 N.E. 237 (1899); *Outland v. Bowen,* 115 Ind. 150, 17 N.E. 281 (1888); *Sayward v. Sayward,* 7 Me. 210 (1831); *Church in Brattle Square v. Grant,* 69 Mass. (3 Gray) 142 (1855); *Elsea v. Smith,* 273 Mo. 396, 202 S.W. 1071 (1918); *Lyford v. Laconia,* 75 N.H. 220, 72 A. 1085 (1909); and *Jordan v. Benwood,* 42 W.Va. 312, 26 S.E. 266 (1896), the same proposition is expressed in 28 Am.

Jur.2d Estates § 196, p. 340, in the following language:

"* * * Wherever a grant is of a fee, there cannot be a remainder, although the fee may be a qualified or determinable one, because the fee is the whole estate and there is nothing left out of which a remainder may be carved."

See also Simes and Smith, The Law of Future Interests, § 228, p. 264 (1956).

I am in complete accord with the part of the majority opinion which identifies the interest created by the exception in the deed from the Federal Land Bank to Williams as a determinable fee. The interest which the Federal Land Bank retained by virtue of the exception in the deed is an interest which terminates automatically upon the expiration of 20 years or the cessation of production of oil, gas or other minerals from the property. It is noted in Restatement of Property, § 44, Comment i (1936) that a determinable fee can be created "as to be defeasible upon the occurrence of an event which is certain to occur some time, if the event is of such a character that the time of the occurrence thereof is neither fixed, nor computable nor certain to happen within the duration or at the end of any designated life or lives." Such an interest was created in this instance in the Federal Land Bank.

It is my conclusion that the future interest in this instance properly is identified as an executory interest. There seems to be no question that had the determinable fee been created by grant rather than exception it would have been identified as a possibility of reverter. 28 Am.Jur.2d Estates § 27, p. 104. As noted in the majority opinion, 28 Am.Jur.2d Estates, § 37, p. 119, states, however:

"While a fee simple determinable is created by the grant of the fee simple determinable to the grantee, thereby reserving the possibility of reverter to the grantor, where an attempt is made to reverse the positions of the grantor and grantee by excepting a determinable fee from the grant, the grantor is held to take a determinable fee, but the grantee takes a fu-

ture interest in the nature of a springing use, rather than a possibility of reverter, which future estate may, unlike a possibility of reverter, be subject to the rule against perpetuities. * * *" (Footnote omitted.)

Generally executory interests are subject to the rule against perpetuities although it does not apply to a possibility of reverter. *Walker v. Marcellus & O.L. Ry. Company,* 226 N.Y. 347, 123 N.E. 736 (1919); 2 Williams and Meyers, Oil and Gas Law, § 335 (1981); Simes and Smith, The Law of Future Interests, §§ 1236 and 1239 (1956).

The Legislature of the State of Wyoming has adopted the Model Rule Against Perpetuities Act drafted by the Commissioners on Uniform State Laws. Session Laws of Wyoming 1949, Ch. 92, §§ 1 and 2; §§ 34–1–138 and 34–1–139, W.S.1977. The Model Rule Against Perpetuities Act also has been adopted in California (§ 715.2, Cal.Civil Code (West 1982)), and Montana (§ 70–1–408, Mont.Code Ann. (1981)). The effect of an adoption of the Model Rule Against Perpetuities Act has been described as that of "restoring the American common-law rule against perpetuities." VI American Law of Property, § 25.91, p. 358 (1952); Comment, Statutes Reinstating the Common Law Rule Against Perpetuities, 48 Mich.L.Rev. 1158, 1165 (1950); Fraser and Sammis, The California Rules Against Restraints on Alienation, Suspension of the Absolute Power of Alienation, and Perpetuities, 4 Hastings L.J. 101 (1953). At common law the rule against perpetuities was created by judicial decision. Gray, The Rule Against Perpetuities, §§ 123 to 200.1 (4th Ed.1942); VI American Law of Property, § 24.4, pp. 14–16 (1952); 5 Powell on Real Property, ¶¶ 759–762 (1981). In his classic treatise, Gray takes the position that the rule is one limiting the time within which future interests can be created, i.e., a rule forbidding remoteness of vesting. Gray, supra, § 1–4, pp. 3 and 4; VI American Law of Property, § 24.3, p. 13 (1952). Modern commentators have not followed Gray's lead as to the rationale of the rule, but have instead taken the position that the underlying purpose of the rule is to provide for the free alienation of property. 5 Powell on Real Property, ¶¶ 762 and 767(a). The modern view is adopted by the Restatement of the Law of Property, § 370, comment i, p. 2150 (1944):

"Thus the rule against perpetuities promotes alienability by destroying future interests which interfere therewith either by eliminating the power of alienation for too long a time or by lessening the probability of alienation for too long a time, * * *."

I would construe the language of Art. 1, § 30 of the Constitution of the State of Wyoming as adopting this modern view.

In this case the difficulty with subjecting the executory interest of Williams to the rule against perpetuities is that there logically flows from that treatment a conclusion that the executory interest would be void resulting in a fee simple absolute with respect to that mineral interest in the Federal Land Bank of Omaha. The incongruity of such a result is manifested by the fact that it would be antithetical to the purpose and intent of the deed from the Federal Land Bank to Williams. Certainly even the Watts do not want to have this mineral interest owned by the Federal Land Bank of Omaha, Nebraska. If, however, the interest of Williams is regarded as vested for purposes of transferability and inheritability, and there is substantial authority to support such a proposition, then there would not occur a violation of the rule against perpetuities. This would be consistent with the modern view as to the underlying purpose of the rule against perpetuities because alienability would be facilitated, not diminished.

The executory interest owned by Williams properly may be deemed "vested" if that term is taken to mean that the holder of the interest is at all times ascertainable and the preceding estate is certain to terminate. In his treatise, Gray notes that there is a dual meaning ascribed to the term "vested." Gray, The Rule Against Perpetuities, § 118, pp. 111–113 (4th Ed.1942). Gray notes that the secondary meaning of the term "vested" is transmissible, but he takes the position that the rule against per-

petuities does not concern itself with this secondary meaning but instead deals only with notions of remoteness of possession. If Gray's position is adopted the executory interest in the instant case would not be considered vested because it may not become possessory within the period proscribed by the rule against perpetuities.

More recent commentators take the position that executory interests which share many of the same characteristics as socalled vested remainders should be considered as "vested" within the meaning of the rule against perpetuities. In Simes and Smith, Law of Future Interests, § 223, pp. 254–255 (1956), the matter is addressed in the following way:

"It should be pointed out that an executory interest limited on an event certain to happen is likely to be a much more substantial interest than one which depends upon an uncertain event. Thus, in the cases discussed above, an executory interest which is certain to come into enjoyment at the death of a designated person is closely linked with a vested remainder. It may well be, therefore, that they should have the same legal characteristics as their related (but differently named) interests. Rules which are adopted relative to the rather tenuous interests which depend upon uncertain contingencies may be poorly conceived when applied to an interest which bears the same name but is in fact of greater substance."

Other commentators support the view of Simes and Smith that the rule against perpetuities should not be applied to executory interests in ascertainable persons which take effect upon events which are certain to occur. See Restatement, Property, § 370, comment h. p. 2146 (1944); VI American Law of Property, § 2420 (1952); Lynn, The Modern Rule Against Perpetuities, p. 15 (1966); 5 Powell on Real Property, ¶ 779[3] (1981). See further Simes and Smith, The Law of Future Interests, § 1236 (1956). Powell states the concept in this way:

"Executory interests can either operate in defeasance of a prior vested fee or can be limited to take effect on a future

event uncertain of occurrence. Both types of executory interest violate the common-law rule against perpetuities, when the event on which the executory interest is limited to arise or to shift is not certain to occur within the permissible period. Executory interests limited on an event certain to occur, however, require different consideration. Thus, a grant 'to A twenty-five years from date' involves no contingency except the passage of time. Such an executory interest is not usefully regarded as 'subject to a condition precedent.' It is, therefore, not subject to the common-law rule against perpetuities. It causes no inconvenient fettering of alienability because of the existence of actuarial techniques for valuing both the preceding and the future interest." (Footnotes omitted.) 5 Powell on Real Property, ¶ 779[3], at pp. 73–6 and 73–7 (1981).

It is not correct, as assumed by the majority opinion, that recognizing the interest in Williams as an executory interest necessarily must lead to its invalidation under the common-law rule against perpetuities. The executory interest here is limited upon alternative contingencies, the expiration of the 20-year term without production, or the cessation of production, only the latter of which is violative of the rule against perpetuities. The common law in such cases recognized an exception to the rule against perpetuities. This exception is encompassed in the Restatement, Property, § 376, p. 2199 (1944), which stated:

"The validity of each separate limitation is determined separately under the rule against perpetuities."

The inception of this exception to the rule against perpetuities is found in *Longhead v. Phelps,* 2 W. Blackstone 704, 96 English Reports 414 (1770), in which the court refused to consider the effect under the rule against perpetuities of alternative contingencies created by will which structured a trust because in fact the first alternative did not violate the rule against perpetuities and had taken effect. See also VI American Law of Property, § 24.54 (1952); Simes

and Smith, The Law of Future Interests, § 1257 (1956); Annot. 64 A.L.R. 1077 (1930); Annot. 98 A.L.R.2d 807 (1964), and the cases cited in these annotations. This rule would fit the instant case because here also the rule against perpetuities was not violated; the 20-year term had passed without production at the time the present action was instituted. Essentially this is the rule that is recognized in *First Portland National Bank v. Rodrique,* 157 Me. 277, 172 A.2d 107 (1961), as summarized in Annot. 98 A.L.R.2d 807, 816 (1964). I would hold in the case before us that since the executory interest is limited upon alternative contingencies, one of which violates the rule against perpetuities and the other of which does not, the invalid provision had no impact upon the validity of the other contingency because the event occurred upon which the efficacy of the valid contingency depended. There was no mineral production, development, or operation within the 20-year period, and the rule against perpetuities should not be applied to void Williams' interest.

*Bagby v. Bredthauer,* Tex.App., 627 S.W.2d 190 (1981), demonstrates that there are other ways of reaching the same result. In that case the Court of Appeals of Texas avoided applying the rule against perpetuities by treating an apparent springing executory interest as a possibility of reverter, which, as I have noted, is not subject to the rule. This was accomplished by a legal fiction of an implied regrant. In effect the Texas court held that the grantor had reserved a right to have the defeasible fee granted back to its grantee. After invoking the fiction the defeasible fee then was regarded as created by grant, not by exception, and the future interest became a possibility of reverter. While such a rule is somewhat awkward, it does not seem to me to be any more awkward than calling this interest a vested remainder, and it does effectuate the intent of the parties.

The history in California with respect to the application of the rule against perpetuities to executory interests is demonstrative of the extent to which that jurisdiction has been willing to go in order to avoid the rule

against perpetuities. California's statutory rule against perpetuities is identical to that contained in our statutes. In construing a deed in which a very similar future interest to the one in this case was created, the California Appellate Court held the interest to be void for violation of the rule against perpetuities. *Victory Oil Co. v. Hancock Oil Co.,* 125 Cal.App.2d 222, 270 P.2d 604 (1954). The court reasoned that the future interest, which was created upon the condition that minerals be discovered on the property within five years from the date of grant, was dependent upon the dubious, uncertain future event, and therefore was subject to the rule against perpetuities. Four years later the Supreme Court of California reached an opposite result in *Brown v. Terra Bella Irrigation District,* 51 Cal.2d 33, 330 P.2d 775 (1958). Brown had obtained a quitclaim deed from a common grantor who previously had given a deed to the Irrigation District in which the grantor reserved a mineral estate for a period of 25 years and so long thereafter as production continued. The deed provided that the grantor "hereby grants, bargains, sells and conveys all of said real property aforesaid, to the [Irrigation District] together with the tenements, hereditaments, and appurtenances thereunto belonging or appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof." The Supreme Court of California held that the grantor's interest upon the failure of the future interest in the Irrigation District also was transferred to it under the language of the deed. This inconsistent result was criticized in Simes, Perpetuities in California Since 1951, 18 Hastings L.J. 247, 264–265 (1967). Finally, in *Rousselot v. Spanier,* 60 Cal.App.3d 238, 131 Cal.Rptr. 438 (1976), the Court of Appeals specifically refused to follow the rule of *Victory Oil,* holding that under California law the mineral estate is in the nature of a profit a prendre, which is an incorporeal interest not subject to the rule against perpetuities. The California approach perhaps presents an extreme in avoiding the application of the rule against perpetuities.

In 2 Williams and Meyers, Oil and Gas Law, § 335, p. 185 (1981), a more straight-forward approach is advocated. It there is said:

" * * * [D]efeasible term interests serve a useful social purpose, whether reserved or granted. The term interest, as compared with a perpetual interest, tends to remove title complications when the land is no longer productive of oil or gas. This simplification of title promotes alienability of land, which is one purpose served by the Rule against Perpetuities. We believe, therefore, that the courts should simply exempt interests following granted or reserved defeasible term interests from the Rule, on the straight-forward basis that they serve social and commercial convenience and do not offend the policy of the Rule against Perpetuities."

While this approach apparently has not been taken by any other court, it does seem that there is a good deal of merit in having the same result in an instance in which the determinable fee is created by exception as in the instance in which it is created by grant. I am disposed to advocate such an approach as a rational and appropriate method of cutting through the intricacies of the common law in order to effectuate the intent of the parties. Essentially Williams and Meyers, supra, is advocating the application to this situation of the maxim that when the reason upon which a rule is justified is not present the rule should not be invoked. See *Wong v. Digrazia,* 35 Cal. Rptr. 241, 60 Cal.2d 525, 386 P.2d 817 (1963).

The discussion in the majority opinion ignores those executory interests which are certain to take effect in possession or enjoyment in the future, and therefore are not contingent, but which cannot be classified as vested in the traditional sense. See Simes and Smith, Law of Future Interests, § 223 (1956). The analysis made in the majority opinion ignores the substantive rules which have developed with respect to the transferability of future interests. The general rule which is recognized in the Restatement of Property, § 162 (1936), is that all remainders and executory interests are alienable by ordinary conveyance without any condition attached based upon whether the interest is vested or contingent. See also Simes and Smith, The Law of Future Interests, §§ 1852, 1857 and 1859 (1956). The language found in 28 Am.Jur.2d Estates, § 371, p. 578, is peculiarly applicable in this situation:

"Executory devises are now generally considered not as bare possibilities, but as certain interests and estates, and as such to be assignable, devisable, and transmissible to the representatives of the devisee, provided the identity of the latter is certain and the object of the devise is fixed. * * * "

I am sensitive to a suggestion that this approach is judicial legislation because it alters the statutory rule against perpetuities adopted by our legislature. At common law the rule against perpetuities was judicially created, and even though the language of § 34–1–139, W.S.1977, is quite positive, it seems appropriate to judicially recognize the exception to the rule against perpetuities advocated in Williams and Meyers, Oil and Gas Law, § 335 (1981). We should remember that the purpose of the statute was to adopt the American common-law rule against perpetuities. The legislature well may have intended to adopt the American common-law rule with the exception engrafted. This certainly would be consistent with the purpose articulated in Art. 1, § 30 of the Constitution of the State of Wyoming. Further, this court has recognized that in those instances in which the justification for a judicially created rule is no longer viable, the court is at liberty to follow comparatively recent decisions or to base its decision upon fundamental principles underlying the rule of law. *McClellan v. Tottenhoff,* 666 P.2d 408, Wyo. (1983); *Choman v. Epperly,* Wyo., 592 P.2d 714 (1979); and *Collins v. Memorial Hospital of Sheridan County,* Wyo., 521 P.2d 1339 (1974). This same philosophy should extend to the adoption of exceptions to the statutory rule against perpetuities which were recognized prior to the adoption of the statute, particularly when the recognition of the exception serves the ultimate purpose of the rule promoting the free alienability of property and

removing restraints otherwise imposed upon alienability.

In summary I would dispose of this case by recognizing that under the common law the interest created in Williams by virtue of the deed from the Federal Land Bank with respect to the determinable fee excepted from its grant by the Federal Land Bank is an executory interest, not a remainder. I would conclude that the rule against perpetuities should not be invoked in such an instance to void the interest created in Williams, and upon the termination of the determinable fee the balance of the minerals became Williams' property.

I have suggested to the court that perhaps wisdom would be found in abandoning at this time any reliance upon common-law labels with respect to future interests. All of us are satisfied that, at the time of his conveyance to the Watts, Williams owned a future interest which enjoyed the properties of alienability and inheritability, and was not subject to the rule against perpetuities. The result is that he had such an interest as could be retained when he made his grant to the Watts, and it is clear from the intention of the parties manifest in this record that he did so. Perhaps it would suffice to simply address the problem in these terms without resort to the historical labels of the common law. We might find that such a resolution would be perceived as a benefit to the practicing bar.